NEW OMAHA THOMPSON-HOUSTON ELECTRIC LIGHT COMPANY V. ANNA DENT, ADMINISTRATRIX OF THE ESTATE OF JAMES R. DENT, DECEASED.*

FILED APRIL 22, 1903.   No. 12,667.

1. **Defense: CONTRIBUTORY NEGLIGENCE: BURDEN OF PROOF.** In an action for negligence, when contributory negligence is relied upon as a defense, the burden of proof is upon the defendant to establish such defense, unless contributory negligence is disclosed by the petition, or by the evidence introduced by the plaintiff in making his case.

2. **Finding.** Where the evidence on the question, either of negligence or contributory negligence, is of such a character that reasonable minds might honestly differ as to the inference to be drawn therefrom as to such questions, a finding either way thereon can not be said to be insufficiently supported by the evidence.

3. **Employer and Employee.** An employee has a right to assume that his employer has taken due precautions to insure his safety, and that the tools, appliances and material furnished by the employer are reasonably safe. *Aliter,* where the employee has notice of the defective condition of such tools, appliances or material or of facts sufficient to put a man of ordinary prudence on inquiry.

4. **Refusal to Give Instruction.** The refusal to give an instruction, proper in form, is not ground for reversal where such instruction is based on a fact the existence of which the jury negative by a special finding supported by the evidence.

ERROR to the district court for Douglas county: WILLIAM W. KEYSOR, DISTRICT JUDGE. *Affirmed.*

* Rehearing allowed. See opinion, p. 674, *post.*

*Edson Rich* and *Charles E. Clapp,* for plaintiff in error.

*Timothy J. Mahoney* and *James A. C. Kennedy, contra.*

ALBERT, C.

On the 2d day of August, 1900, Thomas R. Dent commenced work as a lineman for the New Omaha Thompson-Houston Electric Light Company, which at that time owned and operated an electric light system in the city of Omaha. On the same day, in the course of his employment, he was engaged in fastening wires on insulators on the crossbars of a pole, upon which a number of wires were strung, radiating therefrom to the four points of the compass. The wires were strung on four sides of the pole, and wires of different polarity were on each of the four sides. The insulating material on the wires was old and rotten, and while Dent was fastening one of the wires to the glass insulator, the insulating material on the wires broke or cracked on the side of the glass insulator opposite to him, as he supported himself at work on the pole at some distance from the ground. In attempting to fasten another wire, he used a pair of iron or steel pliers to handle it. While thus engaged his elbow came in contact with the other wire at the point where the insulation was cracked or broken, and the wires being alive and of different polarity, the current passed through his body and killed him. The widow of the deceased was appointed administratrix of his estate and brought this action against the electric light company for damages on account of the death of her husband, charging that death was caused by the negligence of the defendant company.

The petition contains three specifications of negligence: (1) the use of wires on which the insulation had become old and unsafe; (2) placing wires of opposite polarity on the same side of the poles upon which the deceased met his death; and (3) not cutting off the current from wires on which the deceased was at work when killed. The answer

denies any and all negligence on the part of the defendant, and charges contributory negligence on the part of the deceased. The reply is a general denial. The jury found for the plaintiff and judgment was given accordingly. The defendant brings error.

The court, among other things, instructed the jury as follows:

"10. An employee is under the same legal duty to care for his own safety that his employer is to provide for his protection from accidents. It was the duty of James R. Dent while in the performance of his work as a lineman to exercise ordinary and reasonable care and caution under the circumstances of his situation to avoid electric shocks and consequent death. While he had a right to assume that the defendant had used ordinary care and diligence to make it reasonably safe for him to work on live wires, yet he was not at liberty to close his eyes to defects of insulation which were open and obvious, or which he might have seen by using ordinary and reasonable care and caution. If you believe from the preponderance of the evidence that the insulation on wire called No. 2 was broken by said Dent when he tied said wire around the glass insulator; and if you further find from the preponderance of the evidence that said break in the insulating material on said wire was open and obvious to said Dent, or that he ought to have seen it by an exercise of ordinary care on his part before he attempted to tie on the next wire; then your verdict must be for the defendant, even though defendant might have been negligent."

The defendant insists that the verdict is contrary to the foregoing instruction, because the evidence is undisputed that the break or crack in the insulation, which permitted the deceased's arm to come in contact with the wire, was on the top of the turn in the wire and in full sight, so that if he did not see it, he should have seen it and protected himself against it. But there is sufficient evidence to sustain a finding that the insulation on this wire was about ten years old; that the ordinary life of

insulation is from three to four years; that the use of such wire by the defendant was negligence; and that if insulation had been reasonably good, the break would not have occurred. Now, while it is true that the employee assumes the ordinary risks incident to his employment, it is also true that he has a right to assume that his employer has taken due precautions to insure his safety. The deceased was at work on a pole some distance from the ground; his feet rested on a crossbar, and he maintained his position by means of a supporting belt; the wire on which the break occurred was about opposite his shoulders, and another wire passed between his body and the pole. In order to see this break he would have had to lean forward and look around or over the glass insulator on which the wire was fastened. The break of the insulation, therefore, was not obvious in the sense that it was directly within range of his vision. As before stated, he had the right to assume that his employer had taken due precautions to insure his safety. Acting on that assumption, he was not required to guard against dangers arising from the use of defective material or appliances, and it can not be imputed to him for negligence that he failed to look for a break in the insulation, which would not have occurred had his employer taken due precautions to insure the safety of its employees.

But it is urged that he knew the insulation was defective, because he had called attention to it in the forenoon, and had been told that it could not be trusted. But the evidence on this point is that at another point on the line and some hours before the accident, the deceased had called attention to the fact that the insulating material was hanging in strips from the wire at this point, and was then told that it was defective and unsafe. But the defect at that point was patent and of a character to arrest the attention of ordinary persons, because, as before stated, it was hanging in strips from the wires. But there is no evidence that the insulating material on the wires at the point where the accident occurred was obviously defective, or that there

was anything about it to indicate to a person not an expert that it was old or unsafe. It is contended, however, that the deceased was an experienced man and must have known from the appearance of the insulating material on the wire on which he was engaged that it was old and defective. The evidence does show that the deceased was an experienced lineman, but it falls far short of showing that his experience was of such a character as to enable him to judge of the age or quality of insulating material. In fact, it does not appear that he had any experience with insulated wires, or wires carrying dangerous currents. His experience, so far as is disclosed by the evidence, was confined to telephone and telegraph lines. Neither the pleadings of the plaintiff nor the evidence in support thereof disclosed any negligence on the part of the deceased. Therefore, on the question of contributory negligence, the burden of proof was upon the defendant. That being true, in the face of an adverse verdict, the complaint that a finding involved therein is not sustained by sufficient evidence is unfounded, unless the evidence on that point is of such a character that the only reasonable inference to be drawn therefrom is that the negligence of the deceased directly contributed to the injury. The evidence before us is not of that character.

The defendant contends that the second and third specifications of negligence in the petition are not sustained by the evidence. As to the third, the court directed a finding in favor of the defendant, so it requires no further notice. As to the second, there is evidence sufficient to sustain a finding that had only wires of the same polarity been strung on the same side of the pole, the accident would not have occurred. It is true there is a substantial conflict in the evidence as to whether it would have been practicable or advantageous to put only wires of the same polarity on the same side of the pole. But the gist of the action is whether the defendant did or omitted to do that which a man of ordinary care and prudence, under like circumstances, having a due regard for the safety of his

employees, would not have done or omitted, and whether the injury complained of was the proximate result of such act or omission. Such questions, on the record presented, are questions of fact, and having been resolved against the defendant on conflicting evidence, the findings should not be disturbed.

The defendant complains of the refusal of the court to give the following instruction:

"The jury are instructed that if the insulation upon the wires on this pole upon which Dent was injured, which wires have been designated in the testimony as Nos. 2 and 3, was rotten and brittle, and for that reason liable to crack or break upon bending around the glass insulators on the arms, and this fact was known to Dent when he undertook to attach the wires Nos. 2 and 3, and with this knowledge Dent undertook, without protest to this defendant, to attach said wires to said insulators, the plaintiff herein can not complain of the condition of the wires as to insulation, and as to that issue you will find for the defendant.

"By knowledge is meant not only what Dent actually knew but what, from the knowledge of insulation on that subject he possessed either from experience, observation or the warnings or cautions of creditable persons he ought to have known."

This instruction is practically the same as the paragraph hereinbefore quoted, given by the court on its own motion, consequently it was not error to refuse to give the one in question.

The defendant tendered instructions to the effect that if the deceased knew that the wires with and among which he was working were live wires, and proceeded to his work without protest, the jury should find for the defendant as to the third specification of negligence. These instructions were refused and rightly, because, as we have seen, the court of its own motion directed the jury to find against the plaintiff as to that specification.

Other instructions were tendered to the effect that if the

47

deceased knew that wires of different polarity were strung on the same sides of the pole on which he was working, and proceeded with his work without protest, the jury should find for the defendant as to the second specification of negligence. The court refused to give these instructions, but submitted a special interrogatory to the jury as to whether the deceased knew that wires of different polarity were strung on the same sides of the pole. The jury answered that interrogatory in the negative and their finding on that point is sufficiently sustained by the evidence. The jury having specially found that the deceased did not know such fact, the refusal of the court to give the instructions covering that hypothesis, was error without prejudice.

Numerous other errors are assigned, but the foregoing shows only the assignments argued.

It is recommended that the judgment of the district court be affirmed.

DUFFIE and AMES, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on rehearing was filed June 8, 1905. *Judgment of affirmance adhered to:*

1. **Contributory Negligence:** INSTRUCTION. Whether plaintiff's intestate, an experienced lineman with telephone and telegraph wires, had such knowledge and experience respecting the handling of wires charged with heavy currents of electricity and used for lighting and power purposes, and of the character and pliability of the insulation thereon as to its being brittle and liable to break when twisted in fastening because of age and wear, and whether he acted without due care and caution under the circumstances and was chargeable with contributory negligence, *held*, not to be so conclusively proved as that there is no reasonable chance of different minds reaching different conclusions, and to have been properly submitted to the jury for its determination.

2. **Employee:** ASSUMPTION OF RISKS. An employee assumes only the

risks arising from the appliances and materials to be used by him or from the manner in which the business in which he is to take part is conducted, when such risks are known to him or are apparent and obvious to persons of his experience and understanding. *Union Stock Yards Co. v. Goodwin*, 57 Neb. 138.

3. **Instruction.** Whether or not the employee exercised due care and caution in looking for breaks in the insulation on the wire he was working with and fastening, and whether he was guilty of contributory negligence in respect thereto, *held*, under the evidence, to have been properly submitted to the jury for its determination.

4. **Defective Insulation:** Notice. A break occurring in the insulation on the wire which was being handled and fastened around a glass insulator by the plaintiff's intestate is not an open and obvious defect, notice of which will be imputed to him where, under the evidence, there exists reasonable grounds for difference of opinion as to his being able to observe such break in the prosecution of the work in which engaged in the ordinary way and without making an extra effort specially for the purpose of ascertaining the condition of the insulation where the break occurred, after the wire was fastened.

5. **Case Distinguished.** The rule announced in *New Omaha Thompson-Houston Electric Light Co. v. Rombold*, ante, p. 71, on the evidence in that case as to the duty of a lineman of an electric light company to inspect wires with which he was working to discover defects, *held*, not applicable to the case at bar and the case cited is therefore distinguished.

6. **Judgment Affirmed.** The judgment of affirmance heretofore entered, *ante*, page 668, adhered to.

HOLCOMB, C. J.

It is insisted by counsel for the electric light company, plaintiff in error, that the testimony in this case, when interpreted by the rules of law properly applicable, discloses that the death of the plaintiff's intestate was caused by his own negligence contributing thereto, and, for that reason, that the verdict of the jury is against the weight of the evidence and contrary to law. In the former opinion in this case (*ante*, page 668), the question of contributory negligence was given consideration and the conclusion reached was that the evidence as disclosed by the record was such as to warrant the inference that the de-

ceased was free from negligence of a contributory character and that the finding of the jury in that regard in favor of the plaintiff can not be said to be insufficiently supported by the evidence. A rehearing having been granted, the cause has been again submitted for further consideration. A statement of the facts essential to a proper consideration of the errors relied on for a reversal of the judgment obtained in the court below is found in the former opinion and need not here be restated. In the petition it is alleged that "at said time [when plaintiff's intestate was killed] said James R. Dent was entirely without experience in working among electric light wires charged with electricity enough to make the same dangerous; that it was then and there the duty of the defendant, as the employer of the said James R. Dent, to exercise reasonable care and caution in the control, management and direction of its employees sent by it to work among said wires to the end that the said employees should be furnished a reasonably safe working place and to not be subjected to unusual and unnecessary dangers." It is strenuously contended that the evidence is undisputed to the effect that the deceased was an experienced lineman, and that, at the time he went to work for the defendant, he told its foreman that he had had eleven years' experience with a telephone company, and that he had had experience as a lineman for an electric light company at Salt Lake and was familiar with the duties of a lineman. Some confusion in the argument of this case has, it seems to us, grown out of the use of the term "experienced lineman." The assertion that the deceased was experienced in the duties pertaining to linemen among wires carrying light currents of electricity and regarding which there is no specal danger to life by coming in electrical contact with such wires, such as employment when the duties are those of linemen working among wires belonging to telegraph and telephone companies, is no doubt true. The evidence, we think, is not such as to compel the inference that the deceased was an experienced lineman when applied to those working

among wires carrying heavy currents of electricity such as are a menace to life and which are used for light and power purposes as were the wires of the defendant company in the case at bar. The situation we have confronting us then is that of a person having several years' experience in working with and among telegraph and telephone wires and who presumably has acquired that degree of knowledge and experience usually possessed by men of ordinary intelligence and capacity engaged in such employment. We do not find from the evidence in the record that it is indisputably established that the deceased represented himself to be an experienced lineman in respect of prior employment requiring him to work with and among electric light or other similar wires carrying a heavy voltage of electrical currents. While it is in evidence that the deceased represented that in addition to his employment with a telephone company he had worked for another company at Salt Lake, it does not appear positively that such a company was engaged in electric lighting or a similar business in which it is required to use wires charged with strong currents of electricity. From the whole record it is rather to be inferred that the company referred to was a telegraph company. At least the evidence is not so clear and convincing as to lead irresistibly to the conclusion that the deceased had experience in working among and with electric light wires prior to the time he was employed by the defendant in the case at bar and it is made to appear that on the first day of his employment he came to his death by an electrical shock from a pair of wires he was working with. It is contended on behalf of plaintiff in error that the deceased was charged with notice of the defective and decayed condition of the insulation on the electric light wires where he was working at the time of his death and assumed the risks and dangers incident to the handling of wires in such condition. Also that the breaking of the insulation, when one of the wires was changed and fastened around the glass insulator and then twisted, which permitted the wire as

thus exposed to come in contact with his elbow and produce a short circuit through his body, thus causing his death, was an open and obvious danger which he was bound to assume and must be held to have assumed as a matter of law and for which the defendant can not be held legally responsible. It is obvious that the deceased knew he was working with wires charged with heavy currents of electricity—that they were "hot wires" as he was informed. On this point the jury were told in the trial of the case, that the deceased having knowledge that the wires with which he was working were live wires, he assumed all risks and dangers incident to an employment requiring one to handle and work with wires so charged with heavy currents of electricity and that the defendant company could not be charged with legal responsibility because of such fact. The fact, therefore, that the wires were at the time carrying currents of electricity of a dangerous character is material only in so far as it may have a bearing on the defendant's duty to keep them properly insulated in places where employees were required to work with them while in the discharge of their duties in and about the work of their employment, or to take other precautionary measures such as placing wires carrying currents of opposite polarity on opposite sides of the poles on which they were strung.

1. It may be said, then, that without previous experience with electric light wires, the deceased began his employment with the defendant company by being directed to engage with others in the work of changing from one place to another on a junction pole, to which was attached a large number of wires running in all four directions of the compass, some of the wires thereon which were charged with a heavy voltage of electricity used for lighting and for power purposes. It was the deceased's duty at the time to receive the wires from another employee above him on the same pole and attach them to glass insulators by wrapping the wire around the glass insulator and fastening it by twisting it around itself. Before the

wires were handed to him, the insulation was examined by the other workman just above him and taped wherever the wire was exposed and then handed to the deceased to be fastened in the manner stated. Two of the wires thus prepared and handed to him were successfully and without incident attached where they were to be placed. After the third wire had been handed him and while fastening it in the manner stated, such wire being one of a pair the other being the second wire placed in position, the deceased allowed his elbow to come in contact with the upper side of the second wire where twisted, the insulation of which had been broken in wrapping; and he, having hold of the other wire with the instrument he was using in such a manner as to permit the current of electricity to pass from one wire to the other through his body, received a shock which was sufficient to produce death. While it appears that the deceased had observed that the insulation at other places removed from the place where he was working was decayed and hanging down in shreds, we find nothing in the record that would necessarily acquaint one, with the experience and knowledge the deceased apparently possessed, with the fact of the probability of the insulation cracking and breaking in being fastened around the glass insulators in the manner stated, and of the likelihood of receiving a dangerous shock by coming in contact with the exposed wire because of such breaking. Manifestly the object of the taping of the exposed places on the wire before they were handed to the deceased was for the purpose of protection to those engaged in the work of changing the wires from one place to another on the junction pole, and it is a fair inference that the deceased handled the wires under such belief. This is as we understand counsel for defendant in briefs conceded. It is there said: "The undisputed testimony shows that the insulation on the wires with which Dent was working was sufficient to prevent short circuiting by coming in contact with them and became dangerous only when a defect or split had been made in the insulating by the performance of the work

upon which Dent was engaged." When called upon to handle the wires in this manner and to replace them as he was required to assist in doing he may, we think, be justified in assuming that the conditon of the insulation when taped in the manner stated was reasonably well fitted to be handled for the required purposes, without additional risk or danger from the breaking of the insulation and the exposure of the unprotected wire with its attendant extraordinary hazards and dangers while the work was being performed. See *Choctaw, O. & G. R. Co. v. McDade*, 191 U. S. 64.

We do not think it can be said as a matter of law that the deceased was, under the circumstances, guilty of contributary negligence because he handled the wires as though the insulation would remain intact and serve as a protection because of its qualities as a non-conductor of electricity. It can not be said that with the experience and knowledge he is shown to have possessed that he must, like others with much larger experience, be charged with knowledge of the decayed and brittle condition of the insulation and its liability to break when the wires around which it was placed were twisted and this additional strain put upon it. The witness Ripley, a witness apparently fair and competent to testify, says that he supposes that all linemen who had much experience with insulated wire would know that the insulation, in the decayed condition as was that with which the deceased was working, was likely to crack if given a short twist and that it was dried out so that it would not give like new insulation. He says he knew such to be the fact, but that he did not mean that this would be apparent to everybody, but only to those of experience in handling insulated wires, and then they would have to have experience with old and new insulation in order to distinguish the difference. This we regard as a fair statement of the situation and of the deceased's knowledge in respect of the condition of the insulation on the wires on which he was at work. Taking the knowledge and experience of the

deceased as disclosed by the evidence, can it be said that
the dangers from the defective or decayed insulation were
so apparent that the deceased was negligent in respect of
the manner in which he handled the wires he was working
with, or assumed these extraordinary risks incident
thereto? This court has said in speaking with reference
to the rights, duties and liabilities of master and servant:
"An employee assumes the risk arising from defective ap-
pliances used, or to be used by him, or from the manner
in which a business in which he is to take a part is con-
ducted, when such risks are known to him or are apparent
and obvious to persons of his experience and understand-
ing." *Union Stock Yards Co. v. Goodwin*, 57 Neb. 138.
It is only the risks and conditions known to him or ap-
parent and obvious to persons of his experience and under-
standing, that the employee assumes, when he voluntarily
enters into or continues in the employment in which he is
engaged. *Chicago, B. & Q. R. Co. v. McGinnis*, 49 Neb. 649.
Judged by the principle of the decisions cited, we think
the conclusion must inevitably follow that the deceased
can not be said as a matter of law to have assumed the
risks incident to the defective or decayed condition of the
insulation on the wires with which he was working, or that
he was guilty of contributory negligence in engaging in
the work and handling the wires when alive or charged
with strong currents of electricity while covered with such
defective or decayed insulation. The questions of negli-
gence and contributory negligence are questions of fact
for the jury and not for the court, unless, on the facts ad-
mitted or conclusively proved, there is no reasonable
chance of different minds reaching different conclusions.
2 Cur. Law 1011, and authorities cited.

2. It is also contended that there was a want of care
and caution on the part of Dent, required of him while
engaging in the work he was performing, in that after he
had fastened the wire on which the insulation became split
or broken, he ought to have looked at it and examined it
to ascertain whether the insulation remained intact before

he proceeded to tie the wire which he was engaged in fastening when he received the electrical shock producing death. It is urged that the imperfection caused by the breaking of the insulation was an open and obvious defect, the risk and danger of which he was bound to and did assume in the further prosecution of the business in which he was engaged. This latter question in a measure is controlled by the one already discussed. If the insulation had been in such condition as to serve the purpose for which it was placed on the wire, it presumably would not have broken while being fastened to the glass insulator to which it was attached. To require the deceased to look for a break of this kind assumes that the insulation was defective and that he had knowledge of, or should have known of its decayed condition and liability to break while being fastened in the manner it was, or that it was in view of the deceased while doing the work in which he was engaged and therefore it was open and obvious. In respect of the latter phase of the question it appears that the deceased was standing on a lower cross-arm with a supporting belt around his body and fastened to a cross-arm farther up. This permitted his body to swing outward from the cross-piece and between which and his body extended some wires running parallel with the cross-bars on which he was standing and to which the wires he was handling were being fastened. The glass insulators to which the wires were attached, some three inches in diameter by four and a half inches in height, were about even with the top of his shoulders and the break in the wire was on the opposite side from where he was standing. It seems reasonably clear that the break in the insulation produced by the wrapping of the wire was beyond his range of vision and that the condition of the twisted wire at the point where the break occurred could not be observed save by making a special effort for that purpose, by putting his hands on the arms and pulling himself up closer and above or to one side of the glass insulator behind which the break was found. It was only by drawing

himself up and looking over the crossbars and the insula-
tor that he could inspect the wire if he so desired and de-
termine the effect on the insulation with which it was
covered by the twisting which he gave it in fastening it
on the glass insulator.    The break, therefore, when it
occurred, was not, under the evidence, so open or obvious
that it could be seen by the deceased in the ordinary prose-
cution of the work in which he was engaged.    The jury
was warranted in concluding as a matter of fact that this
break could only become open and obvious by the de-
ceased's taking the extra precaution to ascertain whether
the insulation had stood the strain put upon it in twisting
the wire when fastening it upon the glass insulator.    On
this point the court instructed the jury that "if you believe
from the preponderance of the evidence that the insulation
on wire called number two was broken by said Dent when
he tied said wire around the glass insulator, and if you
further find from the preponderance of the evidence that
said break in the insulating material of said wire was
open and obvious to said Dent and that he ought to have
seen it by the exercise of ordinary care on his part before
he attempted to tie on the next wire, then your verdict
must be for the defendant even though the defendant might
have been negligent."    This instruction was in harmony
with the evidence as disclosed by the record, was a correct
statement of the law and the finding of the jury can not
be said to be so unsupported by the evidence as that it
can not be upheld.    Whether the deceased exercised due
care in making these fastenings and in observing the break
in the insulation on the second wire fastened by him were
matters regarding which reasonable minds could very
justly differ, and therefore they became questions pecu-
liarly within the province of the jury and were properly
left to it for its determination.    *New Omaha Thompson-
Houston Electric Light Co. v. Rombold, ante,* p. 54.

In this connection it is to be observed that whether the
deceased knew at the time he was working with a pair of
live wires strung on the same side of the poles was a mat-

ter having a material bearing on his conduct in the deter-
mination of the question of contributory·negligence on his
part. By a special finding the jury answered the question
in the negative and thus found upon sufficient evidence as
a question of fact that he was without knowledge that he
was handling two wires carrying currents of opposite
polarity. Had he known this fact his conduct would, in
all probability, have been different and of course it would
have been his duty to exercise that degree of care and cau-
tion commensurate with the known dangers to. which he
was exposed, which a reasonably prudent and cautious
man of like knowledge and experience would have ex-
ercised under like circumstances.

3. It is also argued that instruction number six given
by the court on its own motion is obnoxious to the rule
announced in the *New Omaha Thompson-Houston Electric
Light Co. v. Rombold, ante,* p. 71. The two cases are
altogether different and the rule applicable in one does
not necessarily apply to the other. In the case cited,
the rule was announced because of testimony therein in-
troduced tending to show that it was the duty of linemen
to make an inspection for defects such as were found
there to exist. The question therein ruled upon does not
arise in the case at bar. That was an exceptional case
growing out of the relative duties and liabilities of master
and servant, because of the character of the evidence re-
specting the servant's duties in that particular case, rela-
tive to the inspection of lines in order to discover and have
remedied defects found to exist. That is, there was in that
case evidence tending to show that in addition to the gen-
eral duties of the lineman, the employee was in a sense an
inspector of lines and that it was a part of his duties to
discover defects and to repair or report them for repara-
tion.

As applied to plaintiff's intestate and the character of
the employment in the case at bar, no such questions arise.
The issues in the present case relate only to the negligence
of the master as alleged and the alleged contributory negli-

gence of the servant pleaded in the answer, as well as his assumption of the ordinary risks incident to his employment and those of an extraordinary character which were open and obvious. The rule announced in the *Rombold* case can not be successfully appealed to in the case at bar. Upon a consideration of the questions presented and argued as grounds for a reversal of the judgment obtained in the court below in the light of the whole record, we are constrained to the view that the judgment of affirmance heretofore rendered was rightly entered and it is accordingly adhered to.

AFFIRMED.