JAMES KOTERA, APPELLANT, V. AMERICAN SMELTING & REFINING COMPANY, APPELLEE.

FILED FEBRUARY 6, 1908. No. 15,012.

1. **Master and Servant:** INJURY: APPLIANCES. The law requires a master to use reasonable care to provide reasonably safe tools and appliances with which, and a reasonably safe place in which, his servant is to perform the duties assigned him.

2. ———: NEGLIGENCE: QUESTION FOR JURY. Whether or not a master who requires his servant to stand upon two parallel, horizontal, iron rods 12 inches apart and about 8 feet above the floor, and to draw, by means of an iron hook, a slide weighing 200 pounds, without providing any railing, or other safeguard, to prevent the servant from falling in the event of his losing his footing, or the hook slipping from the slot in the slide, is guilty of negligence in failing to exercise reasonable care to provide a reasonably safe place for the servant to work is a question of fact for a jury to determine.

3. ———: ———: ———. Whether or not a master, who furnishes a hook, consisting of an iron bar with a hand-hold at one end, and two inches at the other bent at a right angle to the bar, so as to form an elbow to be inserted into a slot, with which to draw a slide weighing 200 pounds, instead of having the elbow of the hook bent at an acute angle to the bar, or in a curve, so as

to prevent its slipping out of the slot in the slide, is guilty of negligence in not exercising reasonable care to provide reasonably safe appliances for his servant is a question of fact for a jury to determine.

4. ————: ASSUMPTION OF RISK. A servant has a right to assume that his master has used due diligence in providing reasonably safe appliances with which, and a reasonably safe place in which, the servant is to perform his duties, and does not assume the risk of danger arising from the master's negligence in that respect, unless the servant knows and realizes such risk of danger.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Reversed.*

*T. J. Mahoney* and *P. A. Wells,* for appellant.

*John C. Cowin* and *Isidor Ziegler, contra.*

GOOD, C.

This is an action to recover for personal injuries sustained by the plaintiff while in the employment of defendant. The action is grounded upon the alleged negligence of the defendant in furnishing plaintiff with an unsafe and insecure place in which to work, and in furnishing plaintiff with unsafe and insecure tools and appliances with which to perform the task assigned him. The defendant answered, denying negligence upon its part, and alleging contributory negligence and assumption of risk on the part of the plaintiff. Upon the trial, after the plaintiff had introduced his evidence and rested, the court, on motion of the defendant, directed a verdict in its favor and rendered judgment thereon. From that judgment the plaintiff has appealed to this court.

Defendant, in the conduct of its business, uses a number of furnaces constructed of brick and iron, in which it smelts the ores handled by it. There are four of these furnaces in one room, or building. Each of said furnaces is about 8 or 9 feet high. Immediately above each of these furnaces are hoppers, extending about $3\frac{1}{2}$ feet above them. Upon a level with the tops of the hoppers is an iron plat-

form, or trackway, over which small cars, containing the ore to be smelted, are hauled, and from which the ore is dumped into the hoppers. In the top of three of the furnaces, and beneath the hoppers, are large iron stoppers, or lids, which are lifted by means of iron handles, or bars, attached to the lids, by the employees who handle the ore. When a car of ore is ready to be dumped into one of the hoppers, the stopper, or lid, is lifted, the ore dropped through the hopper into the furnace, and the lid is then replaced. The fourth furnace, which is designated as "No. 1," has the same kind of a hopper, but a different manner of opening and closing. On this furnace, and between the top thereof and the hopper, is a slide constructed of fire brick set in a metal frame, which sets over and acts as a lid to the hole in the top of the furnace, through which the ore is fed into it. This slide is from 18 to 24 inches square, and weighs about 200 pounds; and upon two sides thereof there are slots, or eyes, into which an iron hook is inserted, and by means of this hook the slide is drawn horizontally over the furnace when ore is to be dumped into it. This particular kind of cover had been in use only a year or a year and a half before the accident. It appears that three men are employed at each of these furnaces; one, to attend to the firing of the furnace, is called a "furnaceman," and the other two, to haul the ore and dump it into the furnace through the hopper, are known as "helpers." Across the top of the several furnaces were two iron rods that ran horizontally and formed a part of the construction of the furnaces for holding them in position. These rods were, perhaps, about 1 inch in diameter and were about 1 foot apart, and were evidently 8 or 9 feet above the floor upon which the furnaceman worked. From the evidence it appears that the plaintiff had worked in this room as a helper and as a furnaceman for a number of years, but until the time of the accident had never worked at furnace "No. 1." It appears that at all of the other furnaces the stoppers, or lids, had been lifted by the helpers. In the case of furnace "No. 1" the

slide was operated by the furnaceman in the following manner: The furnaceman, by a ladder, ascended to the horizontal iron rods running across the top of the furnace, and, standing upon these rods without any platform and without any railing, or safeguards, around him, he inserted into the slot, or eye, on the side of the slide an iron hook, by means of which the slide was drawn from over the hole in the furnace. This iron hook was a bar of iron about $3\frac{1}{2}$ feet long, with a hand-hold at one end, and about 2 or 3 inches at the other end bent at a right angle to the bar, so as to form an elbow. It was this elbow that was placed in the slot, or eye, on the slide, by means of which it was drawn from over the hole. On the day previous to the accident the foreman ordered the plaintiff to take charge of furnace "No. 1" on the following evening and act as furnaceman. Pursuant to this order of the foreman, he took charge of the furnace and fired the same, and, when the helpers came to dump the ore for the first time, he climbed upon the rods and inquired of the helpers if the hook was the tool used in opening the slide, and was informed that it was. Thereupon he took the hook, inserted it into the slide, and made two efforts to draw it from over the furnace, but failed. He then braced himself, by placing his left hand against the hopper, and exerted more force to draw the slide, when the elbow of the hook slipped out of the slot, and the plaintiff was precipitated backwards, and fell to the floor 8 or 9 feet below, and suffered severe injuries.

The accident occurred in the evening about 8 o'clock. At this time the plaintiff was working on what was called the "night shift." The room was lighted by incandescent electric lamps. It was claimed that the lamps were covered with dust, smoke and grime to such an extent that they gave a dim and insufficient light for performing the work. Plaintiff also contended that the defendant was negligent in not providing a railing, or safeguard, around the place where the furnaceman had to stand upon the rods when drawing the slide, and that the place furnished,

in which to perform the task, was unsafe and dangerous, and that the kind of hook furnished for drawing the slide was an improper appliance; that it should have had the elbow turned either at an acute angle or so as to form a curved hook, so that when placed in the eye and pulled upon it could not slip out. On the other hand, the defendant contends that the light was sufficient to enable the plaintiff to see where and how to place the hook in the eye, and that the lights were the same as had been regularly furnished and by which the labor had been performed for many years, and that, if there was any deficiency in the light, the plaintiff was fully aware of it and assumed the risk incident to performing his labor in a dim light. It also contended that the iron bar with the elbow upon it was a proper appliance with which to draw the slide, and the rods formed a safe place to stand upon; but that, if they were not a proper appliance and a safe place, the plaintiff was fully cognizant thereof, and that, if any defect existed, it was open and obvious to him, and that by undertaking to perform the task without protest he assumed the risk of dangers in the performance of the duty assigned him. So far as the dim light is concerned, it appears from the testimony of the plaintiff that by the light furnished he was able to see the eye and to place the elbow therein. Were that the only cause for complaint, we should be constrained to hold that the evidence failed to show that it was the cause of plaintiff's injuries. With reference to the place where the plaintiff had to stand, it would certainly seem safe, so far as the strength of the material was concerned.

The law requires a master to use reasonable care to provide reasonably safe tools and appliances for his servant, and a reasonably safe place in which to perform the duties assigned him. This rule of law is well established, and has been upheld in the following decisions of other courts: *Burns v. Delaware & A. T. & T. Co.*, 70 N. J. Law, 745; *Buehner v. Creamery Package Mfg. Co.*, 124 Ia. 445; *Walker v. Simmons Mfg. Co.*, 131 Wis. 542. It has been

so expressly decided in this court, as to the duty of the master to furnish reasonably safe tools and appliances, in the case of *Vanderpool v. Partridge,* 79 Neb. 165. Under this rule, can it be said as a matter of law that the defendant was not guilty of negligence in requiring the plaintiff to stand and balance himself upon the iron rods and use enough force to pull a slide weighing 200 pounds, without any railing, or safeguards, to prevent his falling in case the hook should slip or he should lose his footing? We think this question must be answered in the negative. There is no reason apparent why a railing, or safeguard, could not have been constructed around the place where plaintiff was required to stand to perform the duty. And it would appear that it would have been much safer to have provided a hook with the elbow turned at an acute angle, or in a curve, so as to prevent its slipping from the eye, or slot, in the slide when pulled upon. At least, we are convinced that the evidence is such as would have warranted a jury in finding that the defendant was negligent in the appliances furnished, and in its failure to provide railings, or safeguards, around the place in which plaintiff was required to stand while drawing the slide. Upon the question of defendant's negligence, there was ample evidence, in our view, to require the submission of the case to the jury.

The more vital question in the case is: Did the plaintiff assume the risk of the danger to which he was exposed? It is a well-recognized rule of law that a servant ordinarily assumes the risk of the dangers that are usually incident to his employment. But this does not require him to assume the risk of dangers due to the negligence of the master, unless such risk is known to him. The servant has a right to assume that the master has used due diligence to provide suitable appliances in the operation of his business, and he does not assume the risk of his employer's negligence in performing such duties. The employee is not obliged to pass judgment upon his employer's methods of transacting his business, but may assume that reasonable

care will be exercised in furnishing the appliances necessary for its operation. *Choctaw, O. & G. R. Co. v. McDade,* 191 U. S. 64; *New Omaha T.-H. E. L. Co. v. Dent,* 68 Neb. 674; *New Omaha T.-H. E. L. Co. v. Rombold,* 73 Neb. 259; *Chicago, R. I. & P. R. Co. v. McCarty,* 49 Neb. 475. The rule of employer's liability, however, is different where the servant knows of the defects, or where they are so plainly observable that he would be presumed to know of them. From the record it is apparent that the plaintiff had only a superficial, general knowledge of how the slide was operated by seeing others perform that duty. He had seen this done repeatedly in the year and a half that it was in operation. The kind of hook used was simple, and the manner of using it would be apparent to any man of ordinary intelligence. The lack of any railing, or guard, was also open and apparent, and, if plaintiff had been injured by falling from the rods while climbing upon them, or about to attend to his duties, we think he would not be in a position to complain. But there are other circumstances which the record does not show that plaintiff knew. It is not shown that at the time of the accident he knew the weight of the slide, or the strength required to move it. Nor is it shown that he knew, or had reason to know, that there was any danger of the hook slipping out of the eye. But, even if he should be supposed to know of the danger of the hook slipping from the eye, still, unless he had some approximate knowledge of the weight of the slide and the power or strength necessary to draw it aside, he would not realize the danger to which he would be exposed by standing in such a place to operate it. Under these circumstances, we do not think it can be said that the danger was open and obvious, nor that from his observation he was negligent in not knowing the amount of force necessary to operate the slide. We think it was a question of fact for the jury to determine from the evidence whether or not the plaintiff assumed the risk of danger in operating the slide. It must not be overlooked that he had not operated the slide before. He therefore

had no knowledge from actual experience of the power necessary to be exerted, and, until he had made the attempt to operate the slide, we think it cannot be said that he was in a position to know and fully realize the danger of injury in attempting to operate it without any safeguards or railings. We are constrained, therefore, to hold that, under all the circumstances, the case presented was one that should have been submitted to the jury for its determination, and that it was error in the trial court to hold as a matter of law that the defendant was not liable.

We therefore recommend that the judgment of the district court be reversed and the cause remanded for a new trial.

DUFFIE and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.