CHARLES D. VAN HORN, ADMINISTRATOR, APPELLEE, V. COOPER & COLE BROTHERS, APPELLANT.

FILED MARCH 16, 1911. No. 16,264.

1. **Master and Servant:** ACTION FOR DAMAGES: EVIDENCE: SUFFI-CIENCY. The evidence, a portion of which is stated in the opinion, *held* sufficient to require the submission of the case to the jury.

2. ——: ——: NEGLIGENCE: EVIDENCE: SUFFICIENCY. If there is any competent evidence from which a want of proper care can be reasonably inferred, the matter becomes a question of fact for solution by the trier of fact, which, in a jury trial, is the jury.

3. **Appeal:** INSTRUCTIONS: STATEMENT OF ISSUES. The statement of the issues to be tried, as contained in the instructions, was more elaborate and in greater detail than can be commended, but, there being no unfairness in the statement and no material matter omitted, the judgment will not, for that reason, be reversed; no prejudice being shown.

4. **Instructions** given are examined, and when considered together, as

a whole, are found to contain no such prejudicial error as to require a reversal of the judgment; there being no material error or misdirection therein.

5. Master and Servant: ASSUMPTION OF RISKS: NEGLIGENCE OF MASTER. There was sufficient evidence to sustain a finding that decedent entered into the service of defendant to engage in a specific line of labor; that the repairing of the elevator was not within his line of employment; that he knew little or nothing of the mechanism, use or handling of elevators; that defendant was fully aware of such want of knowledge before the accident, and was just before that time reminded of the fact. *Held*, That decedent assumed the ordinary risk of the service which he undertook to perform, but that he did not assume the, to him, unknown risks of the more hazardous service; that sending him upon such dangerous service of which it was known he had no knowledge was, under the circumstances, an act on the part of his superior from which the jury might infer negligence.

6. ———: ———. "A servant has a right to assume that his master has used due diligence in providing reasonably safe appliances with which, and a reasonably safe place in which, the servant is to perform his duties, and does not assume the risk of danger arising from the master's negligence in that respect, unless the servant knows and realizes such risk of danger." *Kotera v. American Smelting & Refining Co.*, 80 Neb. 648.

7. ———: INJURIES TO SERVANT: CONCURRENT NEGLIGENCE OF MASTER. If an injured servant is free from contributory negligence, the master will be held liable where such injury was caused by the concurrent negligence of the master, or his vice-principal, and of a fellow servant.

8. New Trial: NEWLY DISCOVERED EVIDENCE: DILIGENCE. In order to obtain a new trial on the ground of newly discovered evidence, the evidence alleged to have been newly discovered must be such that the party applying for the new trial could not with reasonable diligence have discovered and produced it at the trial.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed*.

*Hall, Woods & Pound* and *Greene, Breckenridge & Matters*, for appellant.

*W. B. Comstock* and *O. B. Polk, contra*.

REESE, C. J.

This action was commenced in the district court for Lancaster county by plaintiff as administrator of the estate of Frank C. Van Horn, deceased. It is alleged in the petition, among other things, that the decedent was on the 16th day of October, 1907, and for a short time prior thereto had been, in the employ of the defendant, a corporation, as a pipe cutter and fitter in its place of business; that defendant maintained for its use in handling and storing its goods, which consisted of steam, water and plumbing supplies, in its two-story building, a freight elevator, which elevator had become out of order, and which the decedent was ordered to repair; that the repairing of said elevator was outside the scope of the employment of the decedent and in which he was unskilled; that in obedience to the instructions of defendant's agents, and with them, the decedent went to the top of the elevator shaft and upon the cross-beam of said elevator, which was near the top of said shaft, and while so situated the elevator fell to the bottom of the shaft, carrying with it the decedent, his death being the result; that the elevator was negligently constructed in its supports and safety appliances; that the cables by which the elevator was suspended were old, worn and rusted, were too short, and would not support the elevator; that at the foot of the shaft a support had been constructed, so that one side thereof was substantial and strong, while the other side was composed of weak and unsafe timber and material, to such an extent that when the elevator struck thereon it was caused to tilt, whereby the decedent was violently thrown out and against the floor of the building, receiving an injury from which he soon thereafter died. It is also alleged that defendant's agent was guilty of negligence in leaving decedent in his perilous position and placing an incompetent and inexperienced person in charge of the elevator; that the defects in said elevator were unknown to decedent, but were known to defendant. A judgment

47

for $10,000 was demanded. Defendant answered, admitting its own corporate capacity, the death of Frank C. Van Horn on or about the date alleged in the petition, and that on and immediately prior to the day of his death he was in the employ of defendant All other allegations of the petition are denied. It is affirmatively alleged that decedent was well acquainted with the conditions pertaining to the work with which he was engaged, the condition of the premises, the dangers incident thereto, and with such knowledge he continued in the service and assumed the risks thereof; that the injuries received were the result of his own carelessness and negligence, and not that of defendant, and if not of his own negligence it was by reason of the negligence of a fellow servant. A jury trial was had which resulted in a verdict in favor of plaintiff for $5,000, on which judgment was rendered. Defendant appeals.

The motion for a new trial consists of 29 assignments, some of which are of considerable length, and need not be here set out. The assignments of error presented to this court consist of objections and exceptions to the instructions given and refused by the district court, and that the court erred in overruling the motion for a new trial. At the close of plaintiff's evidence defendant moved for a peremptory instruction to the jury to return a verdict in its favor, but which was refused. Afterward, at the close of the evidence, when both parties had rested, the request for a directed verdict in defendant's favor was again made and refused. The former request was based upon the contention that there was no "testimony in the case which shows that the injury to plaintiff's decedent resulted from actionable negligence of the defendant," and that "the evidence shows that the injury to plaintiff's decedent resulted, either from the personal negligence of Frank C. Van Horn or the negligence of his fellow servant." In support of the latter request, it is contended that "the evidence shows that the plaintiff's decedent assumed the risks of the service in which he was engaged, and which

resulted in the injury to him." The examination of these assignments necessarily involves something of a history of the employment of decedent and his connection with defendant's service.

Decedent's father, plaintiff herein, was engaged in the plumbing business in Lincoln. Defendant was a wholesale dealer, among other things, in plumbing supplies. The decedent was a locomotive fireman. Some time before the accident which resulted in his death, he abandoned his employment as a fireman and became engaged in his father's business, but not having sufficient knowledge of the plumber's trade he entered the employ of defendant, in order to familiarize himself with that line of work. There is sufficient evidence to sustain a finding by the jury that the employment upon which he entered was to learn to handle pipe-cutting machinery, how to run it, and to become familiar with the plumbing supply business, and for that purpose he accepted a much less compensation than he was able to earn at his former occupation; that he was unacquainted with the use of elevators. The elevator in defendant's place of business was what is known as a "freight elevator," the motive power of which was electricity, and was controlled exclusively by the person seeking to be taken up or down, there being no one assigned to that particular line of service. The decedent had used it during the short time of his employment with defendant, as occasion required, in passing to the upper and lower stories of the building. On the day of the accident the elevator became lodged or stuck between two of the floors, and decedent was sent up the shaft for the purpose of making the needed investigation and repairs, in order that the cage might be released. There was room between the floor of the cage and the next floor below in which timbers could have been placed across the opening, and all damage from a fall of the cage could have been obviated, but no such precaution was taken. The decedent went upon the cross-beam of the cage and, it is claimed, removed a ring or contrivance spoken of as a

"button," by which the upward movement of the cage was checked. It is said the purpose of this was to permit the cage to ascend to near the cross-beam at the upper end of the shaft, in order that the cage might be fastened to the cross-beam with a rope and thus prevent it from falling. The evidence on this point is not entirely clear. There is also sufficient evidence to justify a finding that Gilbert Cooper, the son of the president of defendant, was to some extent in charge of the business and employees of the house, and that the ascent of the decedent to the top of the shaft was by his permission, if not his direction. There was not sufficient light where decedent was at work, and he called for a light. Gilbert Cooper left decedent to procure a light, but was gone about 20 minutes, having stopped on his way to converse with some one, and before his return the cage fell, and the death of Van Horn was the result. The evidence upon the trial showed that the cable upon which the cage was suspended broke, or was cut off, at the drum upon which it was wound and unwound in raising and lowering the cage. From that fact, and perhaps other considerations, it is argued that the cable was too short. It also appears that the safety appliances were out of order, or not in place, and therefore there was nothing to impede the downward rush of the cage. It is very clear that for some reason they did not hold or check the fall of the cage.

From these and other evidentiary facts shown we conclude that the court did not err in refusing the two instructions asked, the giving of which would have been to hold that as matter of law there was "no testimony in the case which shows that the injury to plaintiff's decedent resulted from actionable negligence of the defendant," or that it was shown that the injury "resulted either from the personal negligence of Frank C. Van Horn or the negligence of his fellow servant Christensen, or it was accidental," or that in entering upon the service of defendant the decedent "assumed the risks" thereof. Under the evidence these questions were all for the consideration

of the jury, and not the court. There seems to be no evidence that defendant adopted any measures looking to the prevention of the fall of the cage or the safety of its employees. There was sufficient evidence of the want of care on its part to require the submission of the case to the jury. If there is any competent evidence from which a want of proper care can be reasonably inferred, the matter becomes a question of fact for solution by the trier of fact, which in this case was the jury.

It is insisted that the action of the court in the submission to the jury of the issues presented by the pleadings was erroneous, and in support of the contention the cases of *Murray v. Burd,* 65 Neb. 427, *Parkins v. Missouri P. R. Co.,* 4 Neb. (Unof.) 1, 13, and *Cornelius v. City Water Co.,* 84 Neb. 130, are cited. It must be conceded that the statement of the issues to be tried, as contained in the instructions, is more elaborate than can be commended. It is not claimed that the statements are unfair or that anything was omitted which should have been stated, and, indeed, no such claim could be sustained; but it is undoubtedly true that the instructions contain more of the allegations than were necessary to present the material issues to the jury. While declining to approve the instructions as a matter of practice, we are unable to say that they worked or could result in any prejudice to defendant, and for that reason they will not be held to require a reversal of the judgment on that account.

The brief of defendant, as well as the argument of counsel at the bar of this court, present quite a severe arraignment of the instructions. Quite a number of instructions were given, and when considered together, as they should be, we are unable to find any such prejudicial error in them as calls for the reversal of the judgment. It is true that all the defenses pleaded were not contained in any one instruction. This would have been difficult without resulting in confusion. The law of negligence as applicable to the various features of the case was fully given in the fourth, fifth and sixth instructions, and in the sec-

ond requested by defendant; that of the negligence of a
fellow servant in the seventh and eighth; contributory
negligence in the tenth; and the assumption of risks in
the twelfth, and in the fourth requested by defendant.
We are unable to detect any material error or misdirec-
tion in the instructions when considered as a whole, or
failure to instruct upon any material issue involved in
the case.   It was shown that in the descent of the elevator
it struck a platform or support at or near the bottom of
the shaft; that one side of that platform gave way, while
the other stood firm; that by such means the elevator was
tilted at an angle of about 30 degrees; and it was argued
that, from the position of the decedent when discovered
immediately after the accident, the improper construction
of the support had caused decedent to be thrown out,
striking heavily, and thus receiving the fatal injury; and
that the faulty construction of the support, its breaking
down as above indicated, was the proximate cause of the
severity of the injury received by decedent.   By the fourth
instruction the jury were told that if they believed from
the evidence that the manner of the construction of the
support was the proximate cause of the injury to the
decedent, and that the defect of construction was not
known, or was not apparent or in obvious view, they
would be justified in finding defendant guilty of negli-
gence; but if they believed from the evidence that the
manner of construction of the support was not the proxi-
mate cause of the injury to decedent, or that the manner
of its construction contributed to his protection upon the
falling of the elevator rather than otherwise, they would
be warranted in concluding that defendant was not guilty
of negligence on that ground.   This instruction is assailed
upon the ground that there was no evidence that the con-
struction of the framework of that support had anything
to do with the injury of decedent.   As to this, it must be
sufficient to say that the facts of the condition of the sup-
port and the effect upon the cage of the elevator when
striking it were shown, and it was for the jury to say

from the facts submitted whether the support was negligently constructed and such construction was the cause of the extent of the injury.   The instruction was properly given.

As we have already intimated, there was sufficient evidence to sustain a finding that the decedent entered the service of defendant for a specific purpose and to engage in a specific employment.   There is no doubt but that he assumed the ordinary risks of the service which he undertook to perform.   The repair of the elevator was no part of that service.   It must be apparent that the service which he was directed to perform in connection with the repair and release of the elevator, and of which his employer was informed he knew little or nothing, was much more hazardous than the work he was employed to do. The mere sending him to that work at the time his superior (for Gilbert Cooper was shown to be his superior) was informed of his want of knowledge was, under the circumstances, such an act on the part of his superior as from which the jury might infer negligence.   Under any view of the case, as held in *Kotera v. American Smelting & Refining Co.,* 80 Neb. 648, "a servant has a right to assume that his master has used due diligence in providing reasonably safe appliances with which, and a reasonably safe place in which, the servant is ·to perform his duties, and does not assume the risk of danger arising from the master's negligence in that respect, unless the servant knows and realizes such risk of danger."   Such has been practically the uniform holdings of this state and country.

As to the contention that the accident was the result of the negligence of a fellow servant, if we eliminate the question of the negligence of the master, there is still doubt as to any negligence on the part of the servant. That person was called by defendant as a witness, and he testified decedent was telling him what to do and was doing the work, which was, evidently, the conclusion of the witness, but no facts are stated which to any great

.extent support the conclusion. When it is remembered that the master, in the person of Gilbert Cooper, was present giving directions until he went for the light, it must be apparent that his was the directing spirit, and his conduct and declarations at the time must, to some extent at least, have controlled the actions of both. There was enough shown from which the jury might find that he was guilty of a want of care. The law appears to be well settled that, if the injured servant was free from contributory negligence, the master would be liable where such injury was caused by the concurrent negligence of the master, or his vice-principal, and of a fellow servant. 26 Cyc. 1302, and cases cited in notes. The witness testified that he did not know if the "knob" or controller button had been removed prior to the accident, nor who removed it, if it were removed. He also testified to the efforts of the decedent to arrest the upward movement of the elevator, but that such efforts were unavailing. While the accident was a most unfortunate one, both for employer and employee, we are unable to discover any such error on the part of the court or jury as to require a reversal of the judgment.

The motion for a new trial was filed the 23d day of February, 1909. On the 2d day of April, following, defendant filed a supplemental motion for a new trial, based on newly discovered evidence. In support of this motion a number of affidavits were filed, to the effect, that the next morning after the accident certain mechanics and machinists were employed by defendant to repair and restore the elevator to its former usefulness. By those affidavits it was sought to be shown that the cable was not broken or cut off at the drum, as shown upon the trial; that the cable had broken or "pulled in two at the point where it passes around the sheave or pulley on the top of the elevator"; that the witnesses measured the length of the cable and found it of sufficient length, not too short; that they loosened the ends of the cable at the point of attachment to the drum; that the power, that operated the ele-

vator was sufficient, when in motion, to break the cable, and that the cable was in good condition; that an examination was made "for the purpose of discovering just how it happened that said elevator fell and what caused the fall thereof"; that they made such notes of what was found at the time as to the condition of the elevator, the cable, its size, and condition from wear and use, and that it was not materially weakened by wear or rust or broken strands. Without discussing the materiality or immateriality of this alleged newly discovered evidence, but for the purposes of the case conceding its materiality, it is yet clear that the showing was insufficient. The defendant was in the possession of the building, elevator and business continuously before and after the accident. It employed the mechanics to inspect and repair the elevator the next morning after the accident and death of Frank C. Van Horn. They came and made their investigation in the presence of both the Coopers. All that the mechanics discovered was known, or could have been known, to them on that morning. It is not reasonable to suppose they did not know. The interest one would naturally take in his own affairs of that magnitude forcibly suggests that they did know. The elevator had fallen the evening before. Not only had it been damaged, but the young man had been killed. The presence of the mechanics, when coupled with their mission there, would naturally suggest a solution of the problem as to the cause of the accident. They were all there together in the building. The elder Cooper was the president of the company and in charge of its affairs. Gilbert, the junior Cooper, had been in the employ of defendant for many years, was interested in its success, and had charge to a greater or less extent of the control of its business and employees. They *did* know all before the trial that they knew thereafter. The evidence was therefore not "newly discovered." It is claimed that they did not advise the attorneys representing defendant of the facts within their knowledge until after the trial.

This was either negligence or stupidity. We cannot as-
sume that it was the latter, for both are men of long ex-
perience and good business capacity. The statute (code,
secs. 314, 316) requires that the evidence, alleged to have
been newly discovered,-must be such that the party apply-
ing for the new trial "could not with reasonable diligence
have discovered and produced at the trial." The evidence
was "discovered," but there was no "reasonable diligence."
The fact that they failed to communicate the facts within
their knowledge to defendant's attorneys cannot change
the result. It is indispensable that the moving party
should show diligence. 2 Thompson, Trials, sec. 2767.
In *Matoushek v. Dutcher & Sons*, 67 Neb. 627, we held
that, "to entitle a party to a new trial on the ground of
newly discovered evidence, it is not enough that the evi-
dence is material, and not cumulative, but it must further
appear that the applicant for a new trial could not have
discovered and produced such evidence at the trial." In
*McNeal v. Hunter*, 72 Neb. 579, it was held that "a de-
fendant will not be allowed a new trial on the ground of
newly discovered evidence where it appears that such evi-
dence was known at the beginning of the trial, and no
seasonable effort was put forth to procure such evidence
at the trial," etc. See, also, *People v. Williams*, 242 Ill.
197, annotated in 17 Am. & Eng. Ann. Cases, 313. The
witnesses by whom it is alleged the facts set forth in the
affidavits were known reside within the city of Lincoln,
and have so resided during the whole time intervening be-
tween the accident and the trial. We can find no abuse
of discretion on the part of the court in this feature of
the cause.

We discover no prejudicial or reversible error on the
part of the district court. The judgment is therefore

AFFIRMED.