## Frank Matoushek v. Dutcher & Sons.

### Filed February 17, 1903. No. 12,635.

#### Commissioner's opinion, Department No. 2.

1. **New Trial:** Misconduct of Jury. Where a new trial is asked for on the ground of misconduct of the jury, the finding of the trial court on that question, based on conflicting evidence, will not be disturbed by a court of review.

2. **Motion for New Trial:** Accident: Surprise. A motion for a new trial on the grounds of accident or surprise, is addressed to the sound discretion of the trial court, and where it is shown that the facts on which such claim is based were known during the trial, and it is not shown that an effort was made to meet these conditions, it can not be said that there was an abuse of discretion in overruling the motion.

3. **New Trial:** Newly Discovered Evidence: Material Evidence: Cumulative Evidence: Inability to Discuss and Produce: Ground for New Trial. To entitle a party to a new trial on the ground of newly discovered evidence, it is not enough that the evidence is material, and not cumulative, but it must further appear that the applicant for a new trial could not have discovered and produced such evidence at the trial; and where the evidence is merely cumulative, the failure or inability to produce it is not ground for a new trial.

4. **Witness:** Weight-checks: Identification: Introduction by Opposite Party. Where a party, while on the witness-stand, properly identifies a series of scale or weight-checks as having been executed and delivered by himself, or some one authorized by him to do so, they may be introduced in evidence by the opposite party to rebut his testimony without further identification.

5. **Evidence:** Verdict. *Held*, That the amount of the verdict in this case was amply sustained by the evidence.

Error from the district court for Boyd County. Action on account for livery hire, hauling freight, *et cætera*, to recover an alleged remainder due of $387.15. Plea of the general issue as to a portion of the items, set-off as to remainder, closing with a prayer for judgment for $263.83 in favor of defendant. Reply, general denial. Tried below before Harrington, J. Verdict of $127 for plaintiff. Judgment according to verdict. *Affirmed.*

Syllabus by court; catch-words by editor.

*A. H. Tingle, Frederick Shepherd, Lorenzo W. Billingsley, Robert J. Greene* and *Richard H. Hagelin,* for plaintiff in error.

*W. T. Wills* and *D. A. Harrington, contra.*

Barnes, C.

Dutcher & Sons commenced this action in the district court of Boyd county to recover from Frank Matoushek a remainder alleged to be due them for hauling freight, for livery hire, and various other items of account, amounting to the sum of $387.15. Matoushek, by his answer, admitted certain of the items set forth in the petition, denied others, and set up a set-off or counter-claim against the Dutchers for and on account of payments made and certain goods, wares and merchandise sold and delivered to them, and prayed for a judgment in his favor for the sum of $263.83. The reply consisted of a denial of a part of the items of credit set forth in the answer, explained others, and concluded with a prayer for judgment in accordance with the prayer of the petition.

The real issues thus presented were, who was entitled to recover, and the amount due him on the mutual accounts set forth in the pleadings. The trial to a jury resulted in a verdict for the plaintiff for the sum of $127. Defendant's motion for a new trial was overruled, judgment was rendered against him on the verdict, and he thereupon prosecuted error to this court. The defendant in the court below will hereafter be called the plaintiff, and the plaintiff therein will be called the defendant.

The petition in error contains a great many assignments, but in plaintiff's brief and argument only four of them are presented, and therefore all of the others must be treated as waived and abandoned.

1. Plaintiff contends that the court erred in refusing to grant him a new trial on the ground of the alleged misconduct of the jury. In support of that ground we find the

Matoushek v. Dutcher.

affidavit of W. A. Goble, one of the plaintiff's attorneys, in which he states, in substance, that after the jury had heard the evidence, and while they were separated, and before they retired to deliberate on the evidence and their verdict at about 6:30 A. M. on the 28th day of September, 1901, he saw four or five jurymen conversing with Mr. W. T. Wills, one of the attorneys for the plaintiff, at the office door of Mr. Wills, in Butte, Nebraska, in a subdued and low-voiced manner, very earnestly; that the name of one of said jurymen was Frank Crouch; that he did not and does not know the names of the others; that he had reasons to believe and does believe that said Wills was talking to said jurymen about the action; that the conversation entirely ceased when he drew near them; and that nothing was said in his hearing. Opposed to this affidavit is one made by W. T. Wills, one of the defendant's attorneys, and the person mentioned in Goble's affidavit, in which we find the following statement: Affiant says that during the trial of this cause he never had any talk with any of the jurors concerning the cause, and none of the jurors talked with this affiant concerning the cause, and at no time did any of the jurors talk with the affiant, or affiant with the jurors concerning the case.

It further appears that on the hearing of the motion for a new trial, plaintiff produced one M. S. Dailey, who testified, in substance, as follows: I had a conversation with one of the men, who said he was a juror. I learned afterwards that he was. We were engaged in conversation the morning after the evidence was in, and before the jury retired. I told him sometime when it came handy that I would tell, I think it was plaintiff Dutcher's folks, just what I thought regarding the matter of that book, and I went on to state that I believed the book was sold here at my sale, but I could not swear to it. He said, "I believe that too." The conversation went on a little further, and I took it he was a juror from his talk, and I asked him and he said he was, and I told him to excuse me, that I did not know he was, and I went off. I think he said that it did

not make any difference if he was a juror. I afterwards learned that his name was Frank McEwen. The witness also stated that he at once communicated the fact to one of plaintiff's attorneys. The juror named testified that he did not talk with any person on the streets of Butte, or at any other place, about the case during its trial; neither did he talk about the evidence adduced or being adduced during the progress of the trial; that he did not during the progress of the trial have a conversation with one M. S. Dailey concerning the case; that he did not say that in his opinion one of the witnesses had sworn falsely; that he did not say to Mr. Dailey, or any other person, that it did not make any difference; and that during the progress of the trial he had no conversation with any person concerning the case, or the evidence in the case, or the witnesses who testified in the case.

The court, on consideration of this conflicting evidence, found that the jury was not guilty of misconduct, and overruled the motion for a new trial. In the case of *McMahon v. State,* 46 Nebr., 166, Justice HARRISON, delivering the opinion of the court, said: "Another assignment of the petition which is urged, is one in relation to alleged misconduct of the jury after the cause was submitted and they had retired to deliberate. The evidence in respect to the allegations of misconduct was directly conflicting, and the finding of the trial court on this point will not be disturbed." This rule was adhered to in *Carleton v. State,* 43 Nebr., 373. The showing in support of this ground for a new trial was clearly insufficient.

In the case of *Johnson v. Greim,* 17 Nebr., 447, 449, it was shown that the jury, while on their trip to examine the real estate alleged to be damaged by overflow of water, were taken by the bailiff, by the order of the sheriff, to the residence of the defendant in error, without his solicitation or the solicitation of the jury, and there being no other convenient place to procure it, dinner was served to said jury and paid for by the bailiff. It was affirmatively shown that the defendant in error had no conversation

with the jury upon the subject of the cause on trial, and it was held that no misconduct on the part of the defendant in error or the jury, was shown which would require a new trial.

In the case of *Omaha Fair & Exposition Ass'n v. Missouri P. R. Co.,* 42 Nebr., 105, the court said (p. 109): "Mere communications between a party and a juror, not referring to the case, and unaccompanied by circumstances creating obligations, or such as would probably create a sense of obligation, have never been held in this state sufficient alone to vitiate a verdict."

The affidavit of Goble, if true, did not show that the jurors were conversing with defendant's counsel about the case, and the finding of the court on this question was amply sustained by the evidence. Again, it will be observed that it is quite clear that the plaintiff's counsel were aware of the alleged misconduct of the jury before the cause was finally submitted; that they waited until after the verdict had been returned against their client before they made any complaint or in any manner brought the alleged misconduct to the attention of the court. The objection, when it was made, came too late. *Peterson v. Skjelver,* 43 Nebr., 663; *Nye & Schneider Co. v. Snyder,* 56 Nebr., 754; *Parkins v. Missouri P. R. Co.,* 4 Nebr. [Unof.], 113.

The order of the district court refusing a new trial for alleged misconduct of the jury was right, and should be sustained.

2. Plaintiff insists that the court erred in refusing to grant a new trial on the grounds of accident, surprise or newly discovered evidence. His affidavit in support of those grounds set forth the following facts: That during the trial of the case certain weight-tickets were submitted to him by counsel for plaintiff, which tickets he was asked to identify; that a large number of the tickets were unsigned, and all or nearly all were written in pencil; that he has since examined such tickets and has discovered that a large number of them are not in his handwriting, the handwrit-

ing of his sons, or any one working for or authorized by
the defendant to write them; that after the tickets were
shown to him, and during the further progress of the trial,
he had not the time to investigate and discover the truth
as to the tickets; that he was surprised by the introduction
of the tickets in evidence, and had neither time nor oppor-
tunity to closely examine the same or compare them with
his own accounts; that after the testimony, and during the
trial, he was unable to find his scale book containing du-
plicates of each and every one of the weigh tickets issued
at any time during the time covered by the pleadings in
said case, to the plaintiff, by himself or by any one author-
ized to do so; that he has now in his possession the scale
books containing said duplicates, that the tickets testified
to by plaintiff, Clarence Dutcher, and exhibited to affiant
as aforesaid, furnish all of the excess which plaintiff claims
over the amount shown by the defendant's book account
introduced in evidence in said trial, and defendant's testi-
mony and weights shown by said unsigned tickets did not
correspond with any weights shown in defendant's said
books, but do correspond with weights shown by tickets
issued to the plaintiff by one Chapman for William Krot-
ter & Company, and for which transaction the plaintiff re-
ceived payment from said William Krotter prior to the
commencement of this action. It appears from reading the
bill of exceptions that while the plaintiff was on the wit-
ness stand giving evidence in support of the matters set
forth in his answer, the weight-checks or tickets in ques-
tion, were exhibited to him; that he took time to and did
examine them, and after such examination identified all of
them but four, which he laid to one side; and he then testi-
fied that with the exception of the four they were all issued
from his yard, either by himself or his clerks; that he was
in doubt about the four. Defendant's counsel at that time
was about to offer them in evidence, and the court stated
they would be received on rebuttal. It thus appears that
the plaintiff properly identified these checks himself, and
that he knew from the time that he so identified them that

VOL. 67] JANUARY TERM, 1903. 633

they would be offered in evidence on rebuttal; yet, so far
as the record discloses, he made no effort to procure his
scale books, or any other evidence to impeach their
validity, until after the trial was over and the verdict was
rendered against him. No surprise was shown such as
would entitle him to a new trial. No diligence was used
by him, and no effort was made to procure the scale books
described in his affidavit for use on the trial. He did not
even ask the court to delay the final submission of the case
in order to enable him to procure his scale books, or any
other evidence to impeach the validity of the scale tickets.
These scale books can not be said to be newly discovered
evidence, within the meaning of the statute upon that ques-
tion. To entitle a party to a new trial on account of newly
discovered evidence, it is not enough that the evidence is
material, and not cumulative, but it must further appear
that the applicant for a new trial could not, by the exercise
of reasonable diligence, have disovered and produced such
evidence in the trial. *Fitzgerald v. Brandt,* 36 Nebr., 683.
Diligence, or want of it, in discovering the testimony in a
particular case, depends in so great a degree upon various
circumstances surrounding the parties and the conducting
of the case, which are peculiarly within the knowledge of
the trial court, that its discretion upon a matter of grant-
ing a new trial, made in view of them, will not be dis-
turbed. A motion for a new trial on the ground of accident
or surprise is addressed to the sound discretion of the trial
court, and unless there appears to be an abuse of that dis-
cretion the ruling upon such motion will not be disturbed.
*Zimmerer v. Fremont Nat. Bank,* 59 Nebr., 661. At most,
the stubs of the scale books were cumulative evidence.
The plaintiff testified that all of the business transactions
between himself and the defendants were entered on his
books. These books were introduced in evidence. So that
the scale books, if produced, would have corresponded
with the entries in his books which were already in evi-
dence, if his theory of what they showed be true. As a
general rule newly discovered evidence, which is simply

cumulative, is not a sufficent ground for a new trial. *Bolar v. Williams*, 14 Nebr., 386.

We hold that there was no error in refusing to grant a new trial on the ground of accident or surprise and for want of newly discovered evidence.

3. It is contended by the plaintiff that there was reversible error in the admission of evidence, to wit, in the admission of the weigh tickets or scale tickets, exhibits 16 to 69, inclusive, because it is claimed that they were not properly identified, and that a large number of them did not purport to be signed by any one. We can not sustain this contention. It appears that the plaintiff himself, when on the witness stand, identified all of these tickets except four, which were laid aside. Being thus identified, it was proper to use them to rebut his testimony, and there was no error in permitting them to be read to the jury.

4. Lastly, it is contended that the verdict is an impossible one; that it can not be explained on any other theory than that it was arrived at by an arbitrary agreement or by chance. It is sufficient to say, in relation to this contention, that the plaintiff figures out a different sum than that fixed by the verdict as his view of what the evidence showed, while the defendant takes the same evidence, and by a system of figures which appears to be intelligible, finds the sum of $127 due to him, which was the exact amount of the verdict. The evidence was all before the jury, and it was the duty of that body to determine from it which one of the parties was indebted to the other, and the amount of such indebtedness. A careful reading of the bill of exceptions convinces us that the evidence justified the jury in finding the verdict which was returned by them, and it should not be set aside by a reviewing court.

We therefore recommend that the judgment of the district court be affirmed.

Oldham and Pound, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.