## FRANCIS J. McGINNITY v. J. I. CASE THRESHING MACHINE COMPANY, a Corporation.

(164 N. W. 955.)

**New trial — motion for — trial court — discretion of — abuse of — accident — surprise.**

Upon examination of the motion for a new trial herein and the showing and evidence adduced in favor of and against such motion for a new trial, it is *held* that the trial court abused its discretion in not granting such new trial, under subdivision 3 of § 7660, Compiled Laws of 1913, relating to accident and surprise which ordinary prudence could not have guarded against.

Opinion filed October 11, 1917.

Appeal from an order of the District Court of Williams County, Honorable *Frank E. Fisk,* Judge.

Reversed.

*John J. Murphy* and *Ivan V. Metzger,* for appellant.

Excusable neglect on the part of the attorney of record is sufficient ground to warrant the court in granting a new trial. Where legal surprise is clearly shown a new trial should be granted. Citizens' Nat. Bank v. Branden, 19 N. D. 489, 27 L.R.A.(N.S.) 858, 126 N. W. 102.

*Bosard & Twiford (Upham, Black, Russell & Richardson,* of counsel), for respondent.

Where motion for new trial is made on the grounds of accident, surprise, or inadvertence of the plaintiff or the plaintiff's attorney, the order is granted or denied at the discretion of the trial court. Slocum v. McLaren, 109 Minn. 49, 122 N. W. 871; Wingen v. May, 92 Minn. 255, 99 N. W. 809; Matoushek v. Dutcher, 67 Neb. 627, 93 N. W. 1049; State v. Morgan, 80 Iowa, 413, 45 N. W. 1070; Crowell v. Harvey, 30 Neb. 570, 46 N. W. 709; Sapp v. Aiken, 68 Iowa, 699, 28 N. W. 24; Key, New Trials, § 91.

Where it is shown clearly on such motion that the facts on which such claim is based were known during the trial, and it is not shown that an effort was made to meet these conditions, it cannot be said that there was an abuse of discretion in denying the motion. Matoushek v. Dutcher, 67 Neb. 627, 93 N. W. 1049.

There must be shown some detrimental surprise. Something injurious that the party could not, with diligence, meet, and when newly discovered evidence is also relied upon, it must not only appear that the same is material and not cumulative, but that the applicant, by the exercise of reasonable diligence, could not have discovered and produced at the trial. Fitzgerald v. Brandt, 36 Neb. 683, 54 N. W. 992; Zimmerer v. Fremont Nat. Bank, 59 Neb. 661, 81 N. W. 849.

Forgetfulness, or overlooking of material testimony or witnesses, or failure to amend pleadings when necessary, is not sufficient ground on which to base a motion for a new trial. Crowell v. Harvey, 30 Neb. 570, 46 N. W. 709; Ernster v. Christianson, 24 S. D. 103, 123 N. W. 711; Callahan Constr. Co. v. Williams, 160 Ky. 814, 170 S. W. 203; Roediger v. Kraft, 152 N. Y. Supp. 327.

GRACE, J.  This is an appeal from an order denying motion for a new trial.

The plaintiff brings an action to cancel and set aside a certain contract entered into with the defendant for the purchase of a certain tractor gas-engine plowing outfit, the contract price of which was $2,525, and the freight, amounting to $150, which was accompanied at the time of its execution by a written warranty, a copy of which is as follows: "Said machinery is purchased upon and subject to the following mutual and interdependent conditions, and none other, namely: It is warranted to be made of good material, and durable with good care, and to be capable of doing more and better work than any other machine made of equal size and proportion, working under the same condition on the same job, if properly operated by competent persons, with suitable power, and the printed rules and directions of the manufacturers intelligently followed.  The conditions of the foregoing warranty are that if, after a trial of ten days by the purchaser, operated in the manner specified, said machinery shall fail to fulfil the warranty, written notice thereof shall at once be given to the J. I. Case T. M. Company, at Racine, Wisconsin, and also to the dealer from whom received, stating in what parts and wherein it fails to fulfil the warranty, and reasonable time shall be given to said company to send a competent person to remedy the difficulty (unless it be of such a nature that a remedy may be suggested by letter), the purchaser rendering necessary and friendly assistance and co-operation, without compensation for labor or material furnished, and the company reserving the right to replace any defective part or parts.  If, after giving the notice and opportunity to remedy the difficulty complained of, as above provided, the company fails to send a representative to remedy said difficulty (or to suggest an efficient remedy by mail), or if, upon its attempt to remedy the same, the machinery cannot be made to fill the warranty, the part that fails is to be returned immediately by the purchaser, free of charge to the place where it was received, and the company notified thereof; whereupon the company shall have the option either to furnish another machine, or part, in place of the one so returned, which shall fill the warranty, or to return the notes, or money received for the machine or part so returned, and the con-

tract shall be rescinded to that extent, and no further claim made on the company."

The plaintiff, at or about the time of the completion of the first contract, paid cash for freight $150, and in addition thereto turned over to the defendant two horses and two mules of the agreed value of $525. The balance, $2,000, according to the terms of the first contract, was to be divided into four payments of $500 each, for which notes were to be given, the first of such notes being due October 1, 1914, and one of the remaining notes to be due on October 1st in each of the years 1915, 1916, and 1917, with interest thereon at 7 per cent from date until paid. To secure the notes for $2,000 plaintiff gave a chattel mortgage on all the machinery purchased from the defendant, and also a real estate mortgage upon certain real estate described in the complaint. After such first contract was entered into, the defendant desired to change the amount of the notes and reduce the time for payment from four years to three years, so that the payments would be as follows: $667 due October 1, 1914, $667 due October 1, 1915, and $666 due October 1, 1916. Such change was assented to by the plaintiff, and the notes and mortgages accordingly executed, bearing interest at 7 per cent per annum. Such notes and mortgages were executed by plaintiff to the defendant before the machinery had been tried or tested by the plaintiff. In addition to the express warranty, plaintiff relies upon an implied warranty. The machinery in question, in the latter half of October, 1913, was delivered by the defendant to L. A. McGinnity, the brother and agent of the plaintiff, at Hamlet, Williams county, North Dakota. An expert for the defendant came with the machinery for the purpose of starting it to work and trying it. The ground, however, was frozen, and no trial of the machinery was at this time had. The testimony shows that experts of the defendant came the following spring to such place and tried to make the engine and plows work, but largely failed. The plows did not seem to work and the engine would not pull all of them uphill. In addition to this it appears from the testimony that the company had sent out experts at five different times. An expert went out in the fall, another the following spring, in April, and one in the month of June, one in the month of July, and one in the month of September. The same expert was on three of these trips. It appears,

from the greater weight of the testimony that the engine would not develop power and the plows would not plow straight, and neither would give any satisfaction for the work for which they were constructed. That there was serious trouble with the power of the engine is conclusively shown by the greater weight of the testimony, which shows the change of carburetors, the addition of the oiler, the fact that the engine would die down immediately when the plows were attached and put in operation, the repeated efforts of the experts to make such machinery do the work for which it was intended, their complete failure to do so, the letters and demands sent the defendant by F. J. McGinnity, the plaintiff, demanding of the defendant that such machinery do the work or that other machinery be substituted therefor which would, and notifying defendant that unless such action was taken such machinery would be returned to it.

The plaintiff concedes there was to be a change in the contract so that the balance owing on such machinery would be fully paid in three yearly payments instead of four, but earnestly maintains that there was no other change asked for by the defendant. That such change in the contract was the only one spoken of. To bring about such change in the contract L. A. McGinnity, the agent of F. J. McGinnity, wrote "exhibit 2" to F. J. McGinnity, which the agent, or agents, of the defendant read, partly read, or had opportunity to read, which letter the plaintiff received and which is as follows:

McGregor, North Dakota, September 22, 1913.
Dear Brother:—

Rec. your letter O. K. & hope you are feeling better by this time. Was expecting you up until I got your telegram. The threshing machine pulled out last night. we threshed your wheat it made 23½ bu. they are on my place now laid up for win. the J. I. Case agent Erickson from Minot is here today & said he made a mistake on the terms of contract as he ment 4 payments instead of 4 years. Now he asked me to drop you a line & explain the change so you would understand it to change the payments from 4 years to 4 falls, or four payments, this fall one payment & 3 falls for balance. I compared contracts they are exactly the same, only change being in payments. He will send you also one & copy after you sign second. Eng. & plows are ready

at Hamlet.    ans. at once & let me know what you done.    every one
O. K.

Your Bro.

L. A. McGinnity.

From the testimony of L. A. McGinnity and from the letter which he wrote, and from the testimony on behalf of plaintiff relating to such subject, it would appear that it was clearly understood by the plaintiff that was to be the only change in the contract.

"Exhibit A" was the proposed new contract.   It is very similar to the first contract, which is "exhibit 1," with the exception of that part of the contract relating to the warranty of the machinery.   The warranty in the proposed new contract is radically different from the admitted warranty in the first contract.   The warranty in the new contract is as follows:

"It is expressly agreed that the property herein ordered is not warranted either expressly or by implication, except that the company warrants ownership thereof at the time and place of delivery."

It will be seen, therefore, that in the first contract there was a complete warranty of the machinery sold, and in the second contract there was no warranty whatever concerning the machinery other than that which related to ownership.

It must be conceded that the matter of the warranty of the quality, construction, and the capability of such machinery to do the work for which it was constructed and intended to do was a very material part of the first contract, and conferred upon the purchaser of such machinery a very valuable and protective right.   Such warranty was no doubt seriously considered by the purchaser at the time of the purchase of such machinery, and assured his mind that he had full protection against all defects which might exist in such machinery, or its failure to do the work for which it was constructed and intended; and it must have been relied upon by the purchaser of such machinery for his protection.

The letter, "exhibit 2," a letter from L. A. McGinnity to F. J. McGinnity, was written at a time when there was no dispute of any kind concerning such machinery, either as to the material out of which such machinery was constructed, or whether or not it would perform the

service which it was intended to perform. There was at this time no dispute between the seller and the purchaser of the machinery, the only matter which was endeavored to be changed being the time of payment. Such letter, "exhibit 2" written by L. A. McGinnity, positively states that he compared contracts, which would be the first contract containing the full and complete warranty, and the second proposed contract which he said was exactly the same, the only change being in payments. The second contract in evidence is entirely different from the first contract so far as the matter of warranty is concerned. They are wholly and entirely dissimilar. F. J. McGinnity denies the execution of the second contract which is in evidence, and even went so far as to deny his signature thereto entirely. It also appears from the evidence that the witnesses Marius Erickson and M. S. Donovan, whose names appear as witnesses on the second contract, were not present at the time said contract was executed, and were not in fact witnesses to the execution of said contract, if it were ever executed.

To execute a contract legally does not merely mean that a person has signed the same, but in addition to this means that he signed such contract with full knowledge of its contents, or with an opportunity to acquire full knowledge of its contents, and that he was in no manner deceived as to the terms of the contract. A contract is only legally made where the minds of the contracting parties meet as to the terms of such contract. If "exhibit 2" is true, if L. A. McGinnity did compare the proposed second contract with the first contract and there was no difference except as to the terms of payment, then the second contract signed by F. J. McGinnity, if he did sign the same, was not the same contract which L. A. McGinnity examined and referred to in "exhibit 2," the letter which he wrote to his brother. It is not for us to say at this time what were the circumstances surrounding the execution of the new contract, whether or not it was a different contract than that examined by L. A. McGinnity and referred to in his letter to his brother, or whether a different contract from that was substituted at the time of the execution of the second contract, or supposed execution thereof; but all such matters would be susceptible of proof by the testimony of competent witnesses upon a retrial of the action, upon issues fully and properly formed by additional pleadings to be made and served before a retrial of the case. The sole questions, therefore,

in this case is the propriety of granting a new trial; and under all the circumstances of the case saying whether or not the trial court abused its discretion in refusing to grant plaintiff's motion for a new trial. No case is ever tried unless it is tried upon its merits. Courts exist largely for the purpose that causes of action brought therein may be tried upon their merits, and that the disputes between parties and their differences, when legally presented, may be fully examined, and the testimony thereof given by competent witnesses in court, and therefore finally determined by the court. The plaintiff in this case, after judgment in favor of the defendant, in the court below, made a motion for a new trial supported by affidavits, principal among which was the affidavit of J. A. Van Wagen. Some of the principal grounds upon which the motion for the new trial was based were accident and surprise, which ordinary prudence could not have guarded against. There are several other grounds mentioned as the basis for said motion for a new trial, but we think the ones above mentioned are all that need to be considered in disposing of this case. Section 7660, Compiled Laws of 1913, among several other causes therein stated, any one of which is sufficient ground for a new trial, contains in subdivision 3 of said section the following language: "Accident or surprise which ordinary prudence could not have guarded against."

So far as the plaintiff is concerned, taking into consideration that he signed the first contract containing the full warranty; and had full knowledge of its contents, and that the machinery was first purchased under and by virtue of such contract and warranty, and plaintiff's repeated demands and letters to the defendant to make such machinery work, and all the other circumstances and testimony in the case which relate to the failure of the machinery to work and the bringing by plaintiff of the action upon a warranty which is the same as the one in the first contract, leads to the conclusion that plaintiff acted in good faith, and at all times believed, up to the very trial of the case, that he was protected by a warranty similar to that contained in the first contract. So far as the plaintiff then is concerned we conclude that he was entirely surprised at the time of the trial to find the defendant producing and relying upon a contract which contained absolutely no warranty other than that of ownership, which in no sense was a protection to plaintiff against any of the defects of the machinery, whether

as to construction, adaptability, power, or usefulness for the work which it was intended to do. The plaintiff, however, had an attorney in the case, one C. A. M. Spencer, who from a reading of the record we are convinced was an able and learned attorney of wide professional experience. Plaintiff's attorney, Mr. Spencer, had correspondence with the defendant, and prior to the time of the trial procured a copy of exhibit A, which was sent to a certain bank, and which contract, exhibit A, Mr. Spencer examined. After such examination, Mr. Spencer, plaintiff's attorney, wrote the defendant the following letter:

Williston, N. D.   June 2, 1915.

Messrs. Upham, Black, Russell, & Richardson,
          Milwaukee, Wis.
Gentlemen:—

Your favor of May 29th relative to the contract which you sent to the bank here in the case of McGinnity vs. J. I. Case Co. duly received and noted. I have been out of town for the past few days, hence the delay in this matter. I called at the bank this morning and looked the contract over which you claim he executed instead of the one upon which I sued, and I am satisfied that McGinnity never signed any such contract as you sent to the bank, because nobody but a natural born fool would buy an outfit of machinery such as was bought in this case, without any warranty or trial so as to see whether it would work or not, and execute his notes for $2,000 secured by real and chattel mortgages, pay $150 freight money and turn over stock to the value of $500, without any warranty that the machinery would work satisfactory; that would be worse than buying a "pig in a poke;" and while I have not seen the plaintiff in this case, as he lives in Minnesota, still I take the responsibility under all the circumstances to stand upon my complaint as served, and on the contract which I set up and which he *did sign,* and which looks to me would be much more reasonable to assume that he executed said contract than the one sent to the bank. You, no doubt, have examined the contract sent to the bank, and it expressly provides that there is no warranty of said machinery except as to title, and I never heard a man in this country buying machinery to this amount or less under such contract. You had better make out your answer and send it here to me as soon as you get around to it,

and I will admit service, as that is customary among attorneys in this country.

I may have to reply to your answer, so that the sooner you get it around the better it will be, as I presume you want to dispose of this case as soon as possible, and I surely will show you all of the professional courtesy in this matter that is consistent with the interest of my client. This case will probably be a court case, except there may be some question of fact raised by the pleadings which will require it to be submitted to the jury, as that is often done; and as our court convenes the 28th of June, the sooner we get the issues settled the better, and I will arrange so as to get the case set for some specific date in order that your counsel can be here and lose as little time as is possible, although you may have a local attorney to represent you, as I do not presume one of your firm will be here.

Yours truly,<br>C. A. M. Spencer.

It has been to some extent held in various kinds and classes of cases that the knowledge of the attorney is imputed to his client. There no doubt have arisen, and will arise, many cases to which such rule may be very properly applied. Whether such rule is a proper one to apply should be determined, we think, by the particular circumstances and conditions existing in each particular case; if the application of the rule to a given case would operate to thwart a trial of the case on its merits, the rule should have no application where the party to the action against whose interests the rule is invoked, and his attorney, have reasonable excuse to offer or can show they have reasonable grounds for the position which they have taken, it also appearing they acted in good faith, and were surprised, and there are reasonable grounds upon which surprise may be based. It must be conceded in the case at bar that the plaintiff relied fully upon the contract of warranty upon which he based his action. His reliance upon such warranty continued up to and including the trial, where for the first time he finds the defendant claiming he gave no warranty to such machinery. Certainly, this state of affairs must have been surprise to plaintiff. From the letter written by plaintiff's attorney to the defendant, it appears that his attorney took the position that plaintiff never signed

such contract, meaning the second contract, stating in such letter that "nobody but a natural born fool would buy an outfit of machinery such as was bought in this case without any warranty." If, then, the second contract produced at the trial was actually, though possibly inadvertently, signed by the plaintiff, the plaintiff's attorney must have been also greatly surprised. He could not have believed that any such contract as the second was signed by the plaintiff, otherwise he would have amended his pleadings so as to form new issues, which plaintiff's substituted attorneys are now in effect asking the privilege to do, or, in other words, asking the privilege of a new trial, at which new trial he could try additional issues affecting the merits of the case other than those considered at the first trial. Courts favor trial on the merits; and, there appearing to be reasonable excuse for the failure of the plaintiff and his attorney in not alleging and submitting proof of the misrepresentations, if any, of defendant or its agents in and about procuring the second contract, which contained no warranty at all, and it appearing that the plaintiff was greatly surprised, and the plaintiff's attorney fully believing that the plaintiff never executed the second contract, it was an abuse of discretion on the part of the trial court to deny plaintiff's motion for a new trial, thus preventing a new trial upon the real merits of the case.

The case under consideration is not unlike in principle an application to open a default judgment where there is an affidavit of merits presented and answer tendered, and a sufficient showing to excuse the default. In the case of Citizens' Nat. Bank v. Branden, 19 N. D. 489, 27 L.R.A.(N.S.) 858, 126 N. W. 102, the court in defining "surprise" used the following language: "In a case in which a party to an action employs counsel of good reputation and large experience, the neglect by such counsel of matters necessary to the ordinary procedure of the case is a 'surprise' to the party within the meaning of the statute entitling him to relief in such case."

Applying this definition to subdivision 3 of § 7660, Compiled Laws of 1913, which provides for new trials, we are satisfied that the plaintiff and his attorney were entirely surprised that the motion for a new trial should have been granted; that it was an abuse of discretion not to grant such motion for a new trial.

The judgment of the lower court is therefore reversed and the case

remanded to it for a new trial and further proceedings in harmony with this opinion.   All costs to abide the final determination of the case.

ROBINSON, J. (concurring).   The plaintiff brings this action to undo and cancel a contract for a gas-tractor plowing outfit at $2,525 and freight $150.   The plaintiff appeals from the judgment for the defendant and from an order denying a new trial.   For the outfit the plaintiffs sold and delivered to the defendant, two horses and two mules at the agreed price of $525, and he paid in cash, freight $150, and he agreed to pay the balance of $2,000 in four equal annual payments, with interest at 7 per cent, and to secure the same by mortgage on the outfit and on real estate.   "In making the contract L. A. McGinnity, of McGregor, North Dakota, acted as agent for his brother, Francis J. McGinnity, of Thief River Falls, Minnesota.   The outfit was to be delivered to and used by McGinnity at McGregor, North Dakota. The original order-contract was signed by Francis J. McGinnity, and it was agreed on by the two brothers and the salesman of defendant. It contained a full and complete warranty of the plowing outfit which was to be shipped to McGregor, North Dakota, and it provided for the payment of $2,000 according to four promissory notes, each for $500, and interest at 7 per cent.

"Soon after the making and delivery of the order-contract, the salesman of the company went to the brother at McGregor and said that the company refused to accept the contract unless the fi2,000 were made payable in three equal annual payments.   The change was agreed to, and our McGinnity wrote his brother a letter concerning it as follows:

  .  .  .  Erickson from Minot is here today & said he made a mistake in the terms of contract as he meant 4 payments instead of 4 years now he asked me to drop you a line & explain the change so you would understand it to change the payments from 4 years to 4 payments or four payments, this fall one of payment & 3 falls for ballance.   I compared contracts they are exactly the same only change being in payments.   He will send you also one & copy after you sign

second. Eng. & plows are ready at Hamlet. ans. at once & let me know what you done. every one O. .K.

Your Bro.

L. A. McGinnity.

"The letter was read and given to the sales agent, and at the same time he wrote out a second contract conforming to the agreement, and the same was sent to the office at Fargo. Then the Fargo agent took the letter and the blanks and went immediately to Thief River Falls. There he at once met the plaintiff, and took him to the office of their local agent, and presented to him the letter from his brother and the new order-contract, and also a bill of sale for him to sign, transferring his title to two horses and two mules, a chattel mortgage on the outfit, a real estate mortgage, and three promissory notes:

One note for $667 due Oct. 1, 1914;

One note for $667 due Oct. 1, 1915;

One note for $666 due Oct. 1, 1916.

The agent testified he met McGinnity at Thief River Falls about 11 o'clock; then he went to our dealer's place of business and we talked the matter over. He took the papers all home with him and looked them over. He took them all, the whole thing. He said he wanted to look them over and to have his brother look them over, and he brought the papers back in the afternoon. Then we went over to Halvorson's office and the papers were signed in Halvorson's office. Abst. 105.

On the real merits of the case there is not much room for dispute. The outfit was practically worthless. It was not delivered until about November 1st, when the ground was frozen, and at that time of course the experts could not make it work, and they put off their tests until the following spring. Then they tried again and again to make it work, and they failed, and the plaintiff gave it up, and the defendants foreclosed on the outfit, and so they have it all, and the horses and the mules and a mortgage on the plaintiff's land; and he has nothing, only his sad experience.

Now the first order-contract was advisably made, and it contains a full and complete warranty of the outfit. The second order-contract contained no warranty whatever except this:

"It is expressly agreed that the property herein ordered is not warranted, either expressly or by implication, except that the company warrants ownership thereof at the time and place of delivery.

"Any breach of this agreement or any omission on the part of the company does not confer any right of damage for delay or loss of work or earnings, or to other damages, and shall not affect the rights of the parties with respect to any other machinery sold the purchasers, and no cause of action arising out of this contract or transaction shall be offset or counterclaimed against any liability of the purchaser arising out of any other contract or transaction."

Except in regard to the warranty, the two order-contracts are as much alike as two peas in a pod. They are in a bluish printed form of the same size, and present the same general aspect. Each has the same marginal space, with the same matter printed on each margin. The testimony of the plaintiff and his brother shows, beyond mistake, that they did not purpose to buy an unseen outfit without a warranty, and when they agreed to change the original contract in regard to the terms of payment, there was not a word said about any change in any other respect. No agent of the company has testified that a word was ever spoken about any other change; and yet the second contract, which was produced with the signature of McGinnity, wholly omitted the warranty and expressly covenants that there was no warranty. And yet McGinnity took the papers home with him, and looked them over so carefully to see that there was no change only in regard to the payments, that when he saw his signature on the second order-contract he could not believe it to be his signature, and he disowned it and denied it, but in that he was wrong. However, the order-contract which McGinnity took home with him and examined was not the contract he signed. When he came to sign the lot of papers they "slipped one over on him," and obtained his signature to a contract that he had never seen. Indeed there was no special reason for going to the expense and trouble of making the second contract to change the terms of payment. The real purpose of the second contract was to change the warranty, though not a word was said about that change. In any view that can be taken of the evidence, the change was made by gross and manifest deception, and it was made by smoothness and in a way that McGinnity did not know of it. The manner of doing

it is of little consequence. Doubtless it was done in the easiest and smoothest manner. Where a party is signing a lot of papers, there is nothing easier than to substitute one paper for another, especially when the papers present the same general appearance. Indeed, the trick is altogether too common. Signatures are obtained by any device, and then the signer is asked: Can you not read? Why were you not more careful? What are you going to do about it? And the naked signature is presented as conclusive.

In the forum of law, justice, and common sense this case does not present any real question of law or fact. The judgment must be reversed, with costs and new trial granted.

BIRDZELL, J. (concurring specially). An examination of the pleadings and of the facts presented by affidavit in support of the motion for a new trial makes it to appear beyond question that there are important issues which are properly triable in this action, upon which no trial has been had. The one important question for the determination of this court is whether or not the circumstances which are responsible for the failure to try these issues are such as amount to legal surprise within the meaning of § 7660, Compiled Laws of 1913. If a case of legal surprise existed, it became the duty of the trial judge to grant a new trial.

It must be borne in mind that this is an equitable action, that it was tried as a court case, and that the granting of a new trial upon the issues presented by the circumstances surrounding the obtaining of the second order would not involve the delay and expense attendant upon a second jury trial. As I view the matter, courts are justified in being much more liberal in granting new trials in court cases, under § 7660, Compiled Laws of 1913, than in jury cases; and there is less reason for accepting the findings of a trial judge as a basis for final judgment in a court case where, for an excusable reason, a trial has not been had upon important issues, than in cases where the issues have been submitted to a jury. In my judgment a new trial should be had in this case for the purpose of determining the terms of the contract entered into by the parties, if a contract was in fact consummated. It is true that, upon the first trial, the plaintiff relied upon the order of September 15th, and the defendant upon the order of September 22d,

as constituting the terms of the contract; and, while it seems clear that the order of September 15th did not result in a contract, the record discloses that there is grave doubt as to whether the order of September 22d expressed the contractual understanding of the parties. The granting of a new trial should be confined to this issue under appropriate amendments.

It appears that the plaintiff's attorney, in drafting his complaint, relied upon a copy of an order which had been supplied by one of the defendant's agents. This order was dated September 15, 1913. The answer of the defendant sets up an order alleged to have been signed by the plaintiff September 22, 1913. The reply is a general denial of the new matter set up in the answer. Nowhere in the pleadings are there any allegations of fact with reference to the circumstances surrounding the rescission of the contract evidenced by the order of September 15th, and of the reincorporation of the terms of this order into the order of September 22d. The letters referred to in the opinion of Mr. Justice Grace explain the efforts of the defendant's attorneys to induce the plaintiff's attorney to shift his ground before the trial, and to rely upon the order of September 22d. Plaintiff's attorney, however, upon an examination of the second order and apparently in ignorance of the circumstances surrounding its execution, wrote defendant's attorneys relative to the second order as follows: "That would be worse than buying a 'pig in a poke,' and while *I have not seen the plaintiff in this case,* as he lives in Minnesota, still I take the responsibility under all the circumstances to stand upon my complaint as served and *on the contract which I set up and which he did sign,* and which looks to me would be much more reasonable to assume that he executed said contract than the one sent to the bank. You no doubt have examined the contract sent to the bank, and it expressly provides that there is no warranty of said machinery except as to title, and I never heard a man in this country buying machinery to this amount or less under such contract." It appears that the writer of the above letter, Mr. C. A. M. Spencer, was an old man, who had been practising law for forty years or more. That he was at the time under a mental strain due to the contemplation of the severance of social and business relations extending over a period of a lifetime, and of moving to new surroundings in a milder climate. It is true that the letters of defend-

ant's attorneys and the copy of the order forwarded to the bank for plaintiff's examination showed clearly their intention to rely upon the second order, but it is equally true that the second order was taken by defendant's agents and substituted for the first. No explanation of any sort is found in the correspondence preceding the trial, as to how the second order came to be executed, nor is there even an admission of the execution of the first order. In view of the facts that the plaintiff's attorney had no opportunity to consult his client concerning the second order; that the second order had been executed at the solicitation of the defendant's agent; and that in executing his purpose he had carried to the plaintiff a letter written by plaintiff's brother and agent, suggesting that the defendant's agent had "made a mistake on the terms of the contract, as he meant four payments instead of four years," and that "he (defendant's agent) asked me to drop you a line and explain the change so you would understand it to change the payments from four years to four falls, or four payments, this fall one payment and three falls for balance. *I compared contracts they are exactly the same, only change* being in payments," it seems that the plaintiff's failure to secure the trial of the issues surrounding the execution of the second order or contract is excusable, and that, when upon the trial the issues were confined to the second contract, the plaintiff was compelled to try issues that had previously been regarded by him as having little to do with the case. While it is true that there was perhaps culpable negligence on the part of the plaintiff's attorney in not investigating the facts more closely before the trial, it is equally true that, if defendant had pleaded the rescission of the order of the 15th, according to the facts within its own knowledge, the issues would have been squarely presented. I can see no reason why in a case of this character, under the peculiar circumstances, the consequences of this negligence should be visited upon a suitor.

CHRISTIANSON, J. (dissenting). I dissent. The sole question presented on this appeal is whether the trial court erred in denying plaintiff's motion for a new trial based on the ground of accident or surprise, which ordinary prudence could not have guarded against.

The undisputed evidence shows that on September 15, 1913, the plaintiff executed and delivered to the local sales agents of the defend-

ant an order or purchase contract for a certain gas-tractor plowing outfit. The order specifically provided that it was "taken subject to approval, and is to be sent to the company for acceptance or rejection." The defendant refused to sell the machinery upon this order or purchase contract, and a new order or purchase contract was prepared, which bears date September 26, 1913. The second order or purchase contract was, together with the notes and mortgages involved herein, signed by the plaintiff at Thief River Falls, Minnesota, where he resides. He took all the papers to his home and read them over, before he signed them.

On May 15, 1915, plaintiff instituted this action for the purpose of rescinding the contract of purchase, and to cancel the notes and mortgages, on the sole ground that the machinery failed to fulfil certain alleged express warranties, and that for that reason the consideration for said notes and mortgages had failed. In his complaint plaintiff specifically refers to the contract dated September 15, 1913, and pleads at length certain warranties, terms, and stipulations which it is averred are contained in such contract. On May 24, 1915, defendant's attorneys wrote plaintiff's attorney as follows:

Mr. C. A. M. Spencer,                             May 24th, 1915.

    Attorney at law,

      Williston, N. D.

Dear Sir:—

The summons and complaint in the suit of Francis J. McGinnity against the J. I. Case T. M. Company has to-day been referred to us as its general counsel, and on reading the same we note that you set forth in paragraph 5 the form of conditional warranty that was contained in the form of order formerly used by the company in North Dakota, but which was not in use at the time Mr. F. J. McGinnity gave his order, and which form of warranty is not contained in his order; on the other hand, his order contains this stipulation:

"It is expressly agreed that the property herein ordered is not warranted, either expressly or by implication, except that the company warrants ownership thereof at the time and place of delivery."

Under date of March 11th, the company received a request from Mr. George H. Molering, as attorney for Mr. McGinnity, for a copy

38 N. D.—20.

of the order, which request was referred to the company's general collector, F. C. Upton, of Minot, for attention, and we are apprehensive that through some oversight he got hold of and sent Mr. Molering the old form of order, which presumably has found its way into your hands, and has possibly misled you in the drafting of the complaint.

We have no desire that you be misled or put at any disadvantage through any error on the part of the company if such is the case, and so take the liberty of writing you. If you desire further assurance of the correctness of our statement, we would be pleased to forward the original order bearing Mr. McGinnity's signature to your bank for your inspection, with the understanding that the bank return it to us. It would serve no useful purpose for either side to litigate this case under a misapprehension of the contract between the parties; and if our surmise is correct we desire to put you right.

Yours very truly,

Upham, Black, Russell, & Richardson.

Per Black.

Thereafter, in response to a request of the plaintiff's attorney, the attorneys for the defendant forwarded the original order or purchase contract to the Williston State Bank, in order that plaintiff and his attorney might call there and examine it. After plaintiff's attorney had made such examination, he elected to stand on the contract as pleaded in the complaint. Defendant thereon interposed an answer which was served on plaintiff's attorney on June 12, 1915, wherein it specifically denied that it entered into the contract pleaded in the complaint, and alleged affirmatively that the contract under which the machinery was sold contained no warranty whatever, but specifically provided that the property was not warranted, either expressly or by implication, except as to ownership; and a copy of the contract dated September 26, 1915, was attached to and specifically made a part of the answer. Plaintiff's counsel thereupon interposed a reply denying the affirmative allegations of the answer. The case came on for trial on February 23, 1916, and resulted in findings in favor of the defendant. Upon the trial plaintiff was represented by Mr. Spencer, the attorney who prepared the summons and complaint and who had been in charge of the cause from its beginning.

Plaintiff's theory upon the trial and his positive testimony was to the effect that the contract pleaded in the answer was a forgery. The issue of forgery was in reality the only one presented to the trial court for determination. The trial court held that the contract was not a forgery. This finding was unquestionably correct. In fact its correctness is virtually conceded on this appeal.

Subsequent to the trial plaintiff engaged new counsel, who moved for a new trial on the ground of accident or surprise, which ordinary prudence could not have guarded against. The theory on the motion for a new trial was that plaintiff was in error when he testified that the contract set forth in the answer was a forgery, and that the trial court's findings that he actually did execute the contract were correct. The new theory is apparently that plaintiff was induced to sign the contract by deception.

The motion for a new trial was based upon the affidavit of one Van Wagen, an attorney, who was not engaged in practice when the action was commenced and who took no part in the trial thereof, but first became actively connected with the case subsequent to the trial. No affidavit was made by the plaintiff to the effect that he was mistaken in his testimony as given, or surprised upon the trial, nor was any affidavit to this or any other effect made by his brother L. A. McGinnity or by attorney Spencer, or by anyone else. The only affidavit submitted in support of the motion was the affidavit of Van Wagen.

It appears, both from the evidence and from the affidavit, that L. A. McGinnity was in charge of the farm, and that practically all of the negotiations between the parties were had by said L. A. McGinnity acting for the plaintiff. In fact the entire correspondence contained in the record was had between L. A. McGinnity and the defendant. Not only is that so, but the claim of surprise contained in the affidavit filed in support of the motion for a new trial is to the effect "that said L. A. McGinnity, agent, was taken by surprise at the same, and, if any order was signed or substituted, said L. A. McGinnity or plaintiff did not know of its existence, and, being so taken by surprise, was unable to present such matter under proper pleadings to the court." There is no other averment in the affidavit claiming any surprise on the part of the plaintiff personally. The affidavit also stated that L. A. McGinnity employed Mr. Spencer to bring the action, and it clearly appears that

he (L. A. McGinnity) was the moving spirit in the entire transaction. According to his testimony the engine failed to give satisfaction, and certain correspondence was had between him and the defendant with respect thereto. During these negotiations a letter dated August 11, 1914, was written by the defendant to and received by L. A. McGinnity, which was in part as follows:

"When our expert Holder was with you on July 13th, if you had allowed him to explain to you how to take care of this tractor, treated him with courtesy, as we surely expect our customers to do, you would have been benefited by it. You will please note the clause in the order which your brother gave us, which reads plainly as follows:          -

" 'It is expressly agreed that the property herein ordered is not warranted, either expressly or by implication, except that the company warrants ownership thereof at the time and place of delivery.'

"This, however, does not mean that we are not ready to give our customers assistance, as we have also shown you in the part of giving you help whenever you called for it, but owing to the discourtesy you have shown our Mr. Holder, we certainly will not furnish any more experts under these conditions.

"We have forwarded copy of this letter to your brother at Thief River Falls, Minn., so he will understand the situation."

L. A. McGinnity further stated in his testimony that on August 26, 1914, a representative of the defendant, in a conversation, also stated to him that the order or contract of purchase last signed contained no warranty whatever. And, as already stated, the answer of the defendant not only denied the existence of the first contract, but specifically referred to and attached a copy of the second contract.

In Van Wagen's affidavit it is asserted that at the time of the trial plaintiff's attorney Spencer was "quitting" the practice of law and removing from his associates, "covering a period of some forty years, and going to a new and strange part of the country, which caused him anxiety and serious thought, and he could not concentrate his mind on matters he had in charge; and therefore, to affiant's best knowledge and belief, coupled with the fact of surprise, as hereinbefore stated, was legally excused and exonerated from presenting and asking amendments to plaintiff's plea to cover the matter on legal questions arising

on the trial of above cause." Spencer was formerly attorney general of this state; he prepared the summons and complaint and reply in the action; he also examined the second contract. This took place some twenty months before the trial of the action. Even though the approaching departure for California might have caused Spencer "anxiety and serious thought" at the time of the trial, I don't assume that this mental condition existed some twenty months prior thereto, when he examined the contract. The record of the trial bears no evidence of any incapacity or inability on the part of plaintiff's attorney. The cause was well tried on the theory outlined by the pleadings and the testimony given by the plaintiff.

In view of plaintiff's testimony there was no occasion for plaintiff's counsel to ask for an amendment. The very form of the now proposed amendment would have constituted an admission that plaintiff's testimony then given was untrue. As already stated plaintiff has in no manner indicated that he was mistaken in his former testimony, or that the actual facts are as outlined in Van Wagen's affidavit.

It is a cardinal principle that a party must submit to the court the best evidence in his power. Manifestly, plaintiff and his brother L. A. McGinnity knew best whether their testimony given upon the former trial was erroneous, or whether they were surprised by the evidence offered by the defendant. Yet there is complete silence on their part, and a party who was a complete stranger to the proceedings had at the trial makes an affidavit with respect to the alleged accident or surprise.

It should be borne in mind that the trial judge who saw and heard the parties and their counsel, and was familiar with every incident of the trial, refused to grant a new trial. It is elementary that a motion for a new trial on the ground of surprise or accident is addressed to the discretion of the trial court, and that its ruling will not be disturbed on appeal, unless a plain abuse of such discretion appears. Hayne, New Tr. & App. § 86. The statute says that a new trial may be granted for "accident or surprise, which ordinary prudence could not have guarded against." How can it be said that the plaintiff or his agent, L. A. McGinnity, was surprised by the introduction of the second contract, or that ordinary prudence on their part could not have guarded

against such surprise? The undisputed facts are that both the plaintiff and his brother L. A. McGinnity had actual knowledge of the fact that the plaintiff had executed two different orders or purchase contracts, with the understanding that the latter superseded the first. In his complaint plaintiff asked for a rescission of the order or purchase contract dated September 15, 1913, yet at the time he commenced the action he had in his possession the letter from his brother L. A. McGinnity dated September 22, 1913 (set out in the opinion of Mr. Justice Grace), which plaintiff claims was delivered to him at the time he signed the second contract. Not only were they possessed of this knowledge, but on August 11, 1914, some nine months prior to the commencement of the action, they were both specifically notified by letter to the effect that the second contract contained no warranties. After the commencement of the action, plaintiff's counsel was specifically notified by defendant's attorneys that the contract or order on which the goods were sold contained no warranties, and the original contract was submitted to plaintiff's attorney for examination, and a copy thereof attached to and made a part of defendant's answer.

"Accident and surprise, in order to furnish a basis for new trial," says Spelling (Spelling, New Tr. & App. Pr. § 189), "must be such in legal sense. Mere neglect to prepare for what may be reasonably anticipated, and consequent surprise, do not present the condition contemplated by statutes giving the remedy only where ordinary prudence could not have guarded against it.

Where the pleadings indicate with reasonable certainty the line of proof which may be expected to be pursued by either party, the other and losing party cannot predicate surprise solely upon the introduction by his opponent of evidence different from what he expected would be offered. Where a plaintiff has simply proved the allegations of his pleadings, the defendant cannot complain of surprise."

In discussing the same subject Hayne (Hayne, New Tr. & App. § 79) says: "The general rule is that each party must understand his case, and come prepared to meet the case made by his adversary. Therefore a party cannot be surprised that his adversary introduces testimony in support of the issues made by the pleadings, even though such testimony be false; nor can he be surprised at the introduction of a document mentioned in the pleadings." See also Ernster v. Christianson, 24

S. D. 103, 123 N. W. 711; Crowell v. Harvey, 30 Neb. 570, 46 N. W. 709; Matoushek v. Dutcher, 67 Neb. 627, 93 N. W. 1049.

In my opinion the order denying a new trial should be affirmed.

BRUCE, Ch. J. I concur in the dissenting opinion of Mr. Justice Christianson.